FEDERAL BRILLIANT COMPANY, A CORPORATION, RESPONDENT, v. MAX NELSON, DOING BUSINESS AS NELSON CLOTHING COMPANY, APPELLANT.—84 S. W. (2d) 424.

St. Louis Court of Appeals. Opinion filed July 2, 1935.

*Dubinsky & Duggan* for appellant.

*Sylvan Agatstein* for respondent:

McCULLEN, J.—This suit was brought by respondent, plaintiff below, to recover from appellant, defendant, unpaid installments on two electric advertising display signs, and also to recover as liquidated damages sixty per cent of the sum of the installments which would have accrued under the terms of a written contract between the date of the alleged breach of said contract by defendant and the date of the expiration of the period of time covered therein. The case originated in a justice of the peace court where there was a

judgment for plaintiff. Plaintiff's petition was in two counts. Defendant filed no pleading. On appeal by defendant to the Circuit Court of the City of St. Louis, a trial before the court and a jury resulted in a verdict and judgment for plaintiff and against defendant in the sum of $97.50 for three unpaid monthly installments, on the first count of plaintiff's petition, and $366.30 as liquidated damages, on the second count thereof, making a total of $463.80. Defendant brings the case to this court by appeal.

The record shows that plaintiff and defendant entered into a contract called a "Lease Agreement" under date of July 30, 1928. The agreement was on a printed form supplied by plaintiff. Under the terms thereof plaintiff agreed to furnish, erect and connect at defendant's place of business in the City of St. Louis two single faced neon tube electric advertising display signs. The two signs are referred to in the agreement as "the sign." The agreement contains a number of technical specifications which it is unnecessary to set forth here. It was provided therein that the reading matter on the display sign should be as follows: "Nelson's. The Place to Buy Good Clothes." Plaintiff is referred to in the agreement as "the company," and defendant is called "the customer" therein.

One of the provisions of the agreement is as follows:

"The sign is to remain the property of the company until the fulfillment of all the terms and conditions of this lease as set forth below."

The agreement also provides:

"The company further agrees to maintain the above display in accordance with the following specifications as a part of this lease."

Then follow a number of maintenance, repair and renewal of tubes specifications to be performed by plaintiff. The agreement provided that it should cover a period of sixty months "commencing upon the day the sign is erected and ending sixty consecutive months thereafter." Defendant agreed therein to pay plaintiff $27.50 per month in advance upon the first day of each month during the life of the agreement, and also agreed to pay, under an added provision the sum of $5 per month for electric current to be furnished by plaintiff, making a total of $32.50 per month to be paid by defendant to plaintiff throughout the sixty months period. The agreement recited that as a further consideration, the customer, "hereby pays the sum of $82.50, the receipt of which the Company acknowledges, said sum representing payments for the service for the last three months of this lease. In the event of a breach of this lease on the part of the Customer, the advance payment of $——— is to be applied on account of liquidated damages as outlined in paragraph No. 1, under 'Terms and Conditions' on the back of this lease."

The reverse side of the agreement contains, among others, the following provisions:

"Terms and Conditions.

"1. If there be default in payment of any monthly rate as herein provided, or other condition as herein expressed, or upon refusal or neglect of the Customer to accept the sign when tendered by the Company, or upon the happening of any contingency whereby the Company shall feel insecure or the sign be placed in jeopardy, or if circumstances require a cancellation of this lease, it is hereby agreed that in any such event the Customer shall pay the Company upon demand as liquidated damages, 60% of the sum of the monthly payments that would accrue during the unexpired portion of the lease, which sum is agreed to be the actual loss which would be suffered by the Company in any such event. The Company may also in any such event remove the sign from the Customer's premises in addition to requiring the payment of liquidated damages as aforesaid.

"2. It is agreed that the Customer shall not remove the said property from the address where first delivered, nor use same so as to injure or impair it, nor sell it, nor permit any other person to obtain custody or control thereof, and will pay promptly when due all taxes, assessments, or other public charges which may be levied upon the property."

The signs were made and installed by plaintiff in accordance with the specifications in the agreement, and were put in service on September 7, 1928. Defendant thereupon made payment of $82.50 for the last three months of the term of the agreement. The evidence shows that defendant also made monthly payments of $32.50 up to and including February, 1931, when he refused to make further payments.

Defendant's evidence tends to show that the reason for his refusal to make further payments was that plaintiff had breached the agreement by not making necessary repairs on the signs after being notified that they were not operating properly and that they needed repairs. Plaintiff's evidence in this connection tends to show that the reason for defendant's refusal to make further payments was that he was closing out his business and had no further need for the signs.

At the end of May, 1931, when defendant was in default in payments for the months of March, April and May of that year, plaintiff removed the signs from the building wherein defendant had been conducting his business.

Defendant contends that there are four distinct reasons why the judgment of the circuit court should be reversed outright.

In the view which we take of this case, it will be necessary for us to discuss only the first of these contentions. On this point defendant argues that the transaction between himself and plaintiff, as

shown by the terms of the agreement, was for the conditional sale of a chattel by plaintiff to defendant. Respondent contends that it was not a contract for the sale of goods or chattels, but that it comes under the category of work, labor and materials.

Respondent cites the case of Carrollton Monument Co. v. Geary, 210 Mo. App. 45, 240 S. W. 506, in support of its contention that the contract herein should be held to be one for work, labor and materials, and not a conditional sale of a chattel, and argues that Section 3126, Revised Statute Missouri 1929, therefore does not apply to this case. We are unable to agree with respondent's contention in this respect. We believe that the facts in the Carrollton Monument Company case are clearly distinguishable from the facts in the case at bar. In that case the court had before it the question whether a verbal contract for the preparation of a monument, which was to be of two pieces hewn out of a piece of rough granite and to be set up in a cemetery for a certain family at a particular price, was a contract for the sale of a chattel within the Statute of Frauds. The plaintiff therein prepared the monument according to defendants' specification and erected it on the lot in the cemetery designated by defendants. Defendants therein furnished the design of lettering to be placed on the monument. After it was erected, defendants inspected it and refused to pay for it because they did not like it. Plaintiff sued for the purchase price and defendants set up the Statute of Frauds as a defense. The Kansas City Court of Appeals affirmed the judgment for plaintiff in that case, and held that the contract therein was not one for the ultimate delivery of a chattel and that the Statute of Frauds did not apply.

The court discussed in that case the three different views which have come to be known as the English, the New York and the Massachusetts rules concerning the applicability of the Statute of Frauds to contracts for the sale of goods, wares and merchandise, and the reasons underlying the divergent views of courts in passing upon this question. In this connection the court, referring to the English case of Lee v. Griffin, which is reported in 1 Best & Smith Reports 272, and in 23 English Rul. Cases 191, said:

"The English rule, as formulated in the case of Lee v. Griffin, *supra,* and followed by all the later English decisions, treats all contracts having for their final or ultimate result the transfer of a chattel as being a contract of sale thereof, and therefore within the statute, even though the contract calls for the performance of work and labor and also skill in carrying out the contract or in finishing the article for the buyer's use. It is more compactly stated in Lee v. Griffin, *supra,* as follows:

" 'Whether the cause of action be work and labor, or goods sold and delivered, depends upon the particular nature of each individ-

1048

ual contract, and when the contract is such that *a chattel is ultimately to be delivered* by the plaintiff to the defendant, when it has been sent, then the cause of action is goods sold and delivered. (Italics ours).' '' [Carrollton Monument Co. v. Geary, 210 Mo. App. 45, 49, 240 S. W. 506, 508.]

In giving its reasons for holding that the monument involved in that case was not a chattel, the court said that the evidence therein showed ''that it was a foundation embedded in the earth, but the evidence is that it was to be on a foundation four feet deep and extending three or four inches out from the base, and that it was 'set up' on the lot designated in a good substantial and workmanlike manner. . . . A monument of such size and dimensions that it could only be set up on a foundation deeply embedded in the earth and firmly attached to the soil, so that the thing bargained for was a structure or memorial to be cut out of stone in the rough, suitably inscribed and firmly attached to the realty. The thing ultimately to be transferred could not in any view come within the purview of a chattel or under the head of 'goods, wares and merchandise' mentioned in the statute, though perhaps, if the contract had been merely for the purchase and delivery of the granite stone at the warehouse, it might have been within the statute.'' [Carrollton Monument Co. v. Geary, 210 Mo. App. 45, 50, 240 S. W. 506, 508.]

The reason in the Carrollton Monument Co. case, *supra,* shows that the court was particularly careful to base its conclusion expressly upon the peculiar facts of that case, which, in our view, clearly distinguish that case from the case at bar. The monument involved in that case was affixed to a foundation deeply embedded in the earth. After it was completed and set up in its place, it ceased to have any element of movability and became and was a permanent ''structure or memorial . . . firmly attached to the realty.''

In the case at bar, the subject-matter of the agreement is entirely different in character from that which involved in the Carrollton Monument Co. case. The agreement herein involves merely a display sign, a movable chattel, the movability of which is clearly shown by the fact that plaintiff did remove it, and by the further fact that the agreement itself specifically gave plaintiff the unqualified right to remove it upon a breach of the agreement by the defendant. Furthermore, the agreement herein on its face shows that both parties contemplated and intended the display sign to be a movable chattel, the title to which was to remain in plaintiff and was not to be transferred to defendant until the performance by defendant of the terms and conditions of the agreement. In this respect, the agreement provided as follows:

''Upon the fulfillment of all the terms, specifications and condi-

tions of this lease and in consideration of the payment of One Dollar by the Customer to the Company, the sign as specified above will be and become the property of the Customer."

It thus appears that the agreement unequivocally provided for a display sign which was a movable chattel and that it was "ultimately to be delivered by plaintiff to defendant," thereby bringing it clearly within the rule of Lee v. Griffin, *supra*, which was announced and applied in the Carrollton Monument Co. case by the Kansas City Court of Appeals. We are, therefore, of the opinion that the rule announced in the Carrollton Monument Co. case, when applied to the facts in the case at bar, instead of aiding plaintiff's view supports defendant's contention that the agreement was for the conditional sale of a chattel.

We are strengthened in this view of the agreement herein by numerous opinions of the courts of our State. Just as it arose in the English case of Lee v. Griffin, *supra*, the question has arisen in this State in connection with defenses based upon the Statute of Frauds relating to sales of goods, wares and merchandise in cases wherein the sellers sought to take their cases out of the statute by contending that their claims for payment were based upon work, labor and materials and not upon a sale of the goods involved.

In Tower Grove Planing Mill Co. v. McCormack, 127 Mo. App. 349, 106 S. W. 113, the court held that a contract for the manufacture and delivery of doors and windows of the value of more than thirty dollars, although they were of peculiar size and character, such as could not be used in any other building than the one for which they were designed, was within the Statute of Frauds relating to the sale of goods, wares and merchandise. In that case the court said:

"The substance of the contract was a purchase by defendant from plaintiff of certain doors, windows, etc.; that is to say, chattels. It is true the chattels were to be manufactured; but the contract was not to pay plaintiff for the work of manufacturing them, but for the chattels themselves when they were put in a condition suitable for defendant's use. Whether it is right or wrong, the rule in Lee v. Griffin, 1 Best & Smith, 272, has been adopted as the rule of decision in this State. It is that 'when the subject-matter of the contract is a chattel to be afterwards delivered, then, though work and labor are to be done on such chattel before delivery, the cause of action is goods sold and delivered and the contract is within the Statute of Frauds.' [Pratt v. Miller, 109 Mo. 78, 18 S. W. 965.]" [Tower Grove Planing Mill Co. v. McCormack, 127 Mo. App. 349, 352, 106 S. W. 113.]

In Burrell v. Highleyman, 33 Mo. App. 183, the property involved was household furniture which was to be covered and trimmed ac-

cording to the order of the buyer who selected the covering and trimming which the evidence showed were worth half of the price agreed upon for the furniture. The court nevertheless held that the contract therein was one not for labor but was for goods sold and delivered, and that it was, therefore, within the Statute of Frauds. In that case the court, referring to the English case of Lee v. Griffin, *supra,* said:

"It was not until 1861 that the decision in Lee v. Griffin, 1 B. & S. 272, set the mooted question finally at rest in England, by the very simple definition that 'when the subject-matter of the contract is a chattel to be afterwards delivered, then the cause of action is goods sold and delivered, and a seller cannot sue for work and labor.'" [Burrell v. Highleyman, *supra,* l. c. 189.]

After further discussion of a number of cases, the court declared that the question involved had never received direct adjudication from any court of final judicature in this State, and then went on to say:

"Such being the state of the law here leaves us at liberty to adopt, among the many conflicting constructions placed upon that part of the statute by other courts, the one which makes its meaning the clearest, is most in consonance with its letter, and is likely to lead to the least complications, and we do not hesitate to say that that construction is the one adopted in Lee v. Griffin." [Burrell v. Highleyman, *supra,* l. c. 190.] [See, also, Lesan Advertising Co. v. Castleman, 165 Mo. App. 575, 148 S. W. 433; Hellmers, Bettman & Co. v. Nagel & Co., 112 Mo. App. 202, 87 S. W. 61; Evans Rich Mfg. Co. v. David G. Evans Coffee Co. (Mo. App.), 2 S. W. (2d) 176.]

The agreement in the case at bar provided for certain work of repair and maintenance to be performed by plaintiff on the display sign throughout the life of the agreement. Plaintiff contends that these provisions make the agreement one for advertising service and take it out of the category of a contract for the sale of a chattel. We are of the opinion that such provisions of the agreement cannot be held to have the effect of defeating the plain purpose of Section 3126, Revised Statutes 1929 (Mo. Stat. Anno., Section 3126, p. 1965), for the reason that notwithstanding those provisions, it also provided for the ultimate delivery of a chattel by plaintiff to defendant, thereby bringing it within the rule in Lee v. Griffin, *supra,* which has been adopted by the courts of this State. Even though plaintiff was required to do work upon the sign from time to time, it was nevertheless, under the agreement, ultimately to become the property of defendant upon his performance of the conditions named therein. We, therefore, hold that the agreement herein was a conditional sale agreement for the sale of a chattel, and that it comes within the statute last above mentioned.

The evidence shows without any dispute that plaintiff removed the display sign from defendant's place of business, but there is no evidence whatsoever showing that plaintiff either refunded or offered to refund, or tendered to defendant any part of the money which had been paid by defendant to plaintiff under the terms of the agreement as required by Section 3126, Revised Statutes Missouri 1929 (Mo. Stat. Anno., Sec. 3126, p. 1965). That section provides that:

"Whenever such property is so sold or leased, rented, hired or delivered, it shall be unlawful for the vendor . . . to take possession of said property without tendering or refunding to the purchaser, lessee, renter or hirer thereof, . . . the sum or sums of money so paid, after deducting therefrom a reasonable compensation for the use of such property, which shall in no case exceed twenty-five per cent. of the amount so paid, anything in the contract to the contrary notwithstanding, . . ." [Section 3126, Revised Statutes Missouri 1929 (Mo. Stat. Anno., Sec. 3126, p. 1965).]

The language in the above section "whenever such property is so sold or leased, rented, hired or delivered" refers to personal property sold to any person to be paid for in whole or in part in installments, on condition that the same shall belong to the purchaser whenever the amount paid shall be a certain sum, as described in the section of the statute which immediately precedes the section we are considering.

In an early case this court held that the statute governing conditional sales, now Section 3126, Revised Statutes Missouri 1929, does not permit the vendor to retake the chattel thus rescinding the sale, and then sue for the unpaid purchase money thus enforcing the contract of sale. [Laclede Power Co. v. Estate of Ennis Stationery Co., 79 Mo. App. 302, 307.] In that case the court said:

"When the subject-matter of the bargain is surrendered to the vendor, the consideration, as well as the contract itself, has failed and the vendee is no further liable thereon. What has been theretofore paid would, at common law, be forfeited to the seller; what has not been paid he could not recover from the buyer. . . . In recognition of the common law rules applicable to conditional sales, the Legislature of this State has enacted that the vendor in a conditional sale shall not retake the property 'without tendering or refunding' to the purchaser' the sum theretofore paid 'less a reasonable compensation for the use of such property,' not to exceed twenty-five per cent of what was paid. [Revised Statutes 1889, sec. 5181.] *So far from helping the vendor in such contracts to recover what has not been paid, this act compels him to refund substantially all which was paid, evidently upon the idea that since the retaking of the property is a rescission of the contract, it is only just that the*

*party should be put substantially in statu quo as in cases of rescission of other contracts.*" [Laclede Power Co. v. Estate of Ennis Stationery So., *supra*, l. c. 307, 308.] (Emphasis ours.)

In Urquhart v. Sears, Roebuck & Co., 207 Mo. App. 627, 227 S. W. 881, the Springfield Court of Appeals held under the statute which we now have under consideration and which was then Section 2285, Revised Statutes Missouri, 1919, that a judgment for the vendor in an action of replevin was not conclusive against the purchaser's right to sue for seventy-five per cent of the amount paid, and that the vendor under a conditional sale contract in such an action must affirmatively show a tender or refund of the amount paid by the purchaser in accordance with the provisions of the statute, and that the purchaser is not required to bring forward the defense of no tender or no refund to defeat the action.

In the case of American Hoist & Derrick Co. v. Trustee & Registrar Corp. (Mo. App.), 27 S. W. (2d) 437, this court, in passing upon the conditional sale statute held that the conditional seller mentioned therein could not take possession of the property in question on the appointment of a receiver for the buyer without tendering or refunding to the purchaser the payments made after deducting reasonable compensation for the use of the property, not exceeding twenty-five per cent of the amount so paid, *notwithstanding anything in the contract to the contrary*. Referring to the section of the statute now under consideration, the court in that case said:

"The terms of the last mentioned section are mandatory and the authorities all hold that the vendor cannot regain possession of the property under such facts as are disclosed by this record unless he complies with the terms of this statute." [American Hoist & Derrick Co. v. Trustee & Registrar Corp., *supra*, l. c. 438.]

In view of the mandatory character of Section 3126, Revised Statutes Missouri 1929, and the construction which it has been given by our courts, it is clear that plaintiff on this record was not entitled to recover any amount from defendant under the conditional sale agreement herein because there is no evidence to show that it complied with the requirements of the conditional sale statute in any manner whatsoever. The circuit court should have sustained defendant's demurrer to the evidence. The judgment of the circuit court is, therefore, reversed. *Hostetter, P. J.,* and *Becker, J.,* concur.