BERRY-KOFRON DENTAL LABORATORY COMPANY, a Corporation, Appellant, v. FORREST SMITH, State Auditor and ROY McKITTRICK, Attorney General.—137 S. W. (2d) 452.

Division Two, February 21, 1940.

*Harry G. Erbs* and *Rene J. Lusser* for appellant.

*Roy McKittrick,* Attorney General, and *Tyre W. Burton,* Assistant Attorney General, for respondents; *John H. Hendren* of counsel.

COOLEY, C.—Action for declaratory judgment by which plaintiff sought to have the court declare it not to be engaged in the business of selling tangible personal property at retail, as defined by the Sales Tax Act of 1937, page 552 et seq., particularly Section 1, paragraph g and Section 2, paragraph a, and not subject to the provisions of the act relative to assessment and collection of the tax; also that Rule 57 promulgated by the State Auditor, so far as it applies to plaintiff, is invalid. Defendants by their answer assert that plain-

tiff is subject to the tax, that on the facts stated in plaintiff's petition the transaction there described is a sale of tangible personal property at retail within the purview of the Act, and that Rule 57 is a reasonable and correct construction of the Act and they ask the court so to declare. The court found and by its judgment declared as prayed by defendants and dismissed plaintiff's bill. Plaintiff appealed. It is agreed that appellant in its brief has made a correct statement of the facts, as follows:

"Plaintiff's petition alleges that it is engaged in the dental laboratory business in the City of St. Louis, Missouri. It further states that in the course of its business it does not sell any dental equipment, dental appliances or dental supplies, but is engaged exclusively in the making, manufacturing and fabricating of artificial dentistry, dentures, inlays, bridge work and dental restoratives exclusively for dentists from plaster models or impressions made by the dentists of the mouths of their particular patients; that each and every item manufactured by plaintiff are designed exclusively for the individual use of the particular patient of the dentist ordering said item, and that said dentures or devices so manufactured by plaintiff are of no value whatever to any other person except the individual patient for whom such denture, or other restorative made by plaintiff, is designed and made; that the finished denture or other restorative manufactured and delivered to the dentist by plaintiff is thereafter placed in the mouth of the patient by the dentist and that the dentist so affixing said device does not change, alter, modify or tamper with such dental device except to make minor adjustments thereon.

"The petition further alleges that in the manufacture of any of the items in plaintiff's business, certain materials and supplies are used in making the original cast from which the finished denture is ultimately made, and, that all of the materials are completely destroyed in the process of manufacture of the finished denture or dental device.

"The petition further states that the cost of materials comprising the finished denture or dental device is but a small fractional part of the cost of the finished denture and that by far the greatest cost is comprised of the cost of the destroyed materials and supplies, the cost of skilled and expert technicians, and the costs of machinery and equipment supplied by plaintiff.

"To sustain the allegations in plaintiff's petition, plaintiff's evidence at the trial of the cause showed that it manufactures full dentures, partials, porcelain crowns, fixed bridge work, cast gold crowns and inlays; that plaintiff has nothing whatever to sell, such as dental equipment, medicines, or a general line of dentists' tools. Before any article is manufactured by plaintiff it has to receive a prescription from the dentist and an impression of the mouth of the dentist's patient. The method of manufacture and finishing of the various

dentures are fully set forth in appellant's abstract of the record; that the witness (Robert J. Kofron, president of plaintiff company) in all of his experience (twenty years) has never seen two impressions from two different mouths that were identically alike; that a denture has no salvage value whatever, excepting gold restoratives; that a set of teeth made for a particular patient of a dentist cannot be used by any other person. When the finished denture is delivered to the dentist, plaintiff bills the dentist for it; that plaintiff does not look to the patient at all for pay for the manufactured article; that plaintiff is unfamiliar with the price that the dentist makes or of the profit that the dentist makes on the articles manufactured by plaintiff.

"Plaintiff's evidence further showed that the substances that are used in the manufacture of a denture, other than the final product, are all destroyed completely; that the actual cost of the material of a denture is between eleven and fifteen cents and the price of the finished product to the dentist is three dollars, or approximately 5 per cent or less of the finished product; that beginners in the business are paid twenty-five dollars per week and that the finished technician receives all the way up to seventy-five dollars per week; that in the case of gold crowns the cost of materials is approximately 30 per cent of the finished product price; that in the manufacture of a porcelain cap the cost of materials is about six cents, and the crown costing the dentist six dollars and more, the cost of materials, therefore, being about 1 per cent of the price of the product and that the final price is practically all labor.

"The defendants admit that Special Rule No. 57 was formulated by the State Auditor, claiming it to be a reasonable and correct construction of the Sales Tax Act as it applies to this plaintiff and claiming that the plaintiff is selling the said dentures, etc., to the dentists who order such articles, and by the Sales Tax Act the tax of 2 per cent of the purchase price charged is due the State of Missouri."

Section 2 of the Sales Tax Act, Laws 1937, l. c. 557, provides that there is levied and imposed and shall be collected and paid (a) "upon every retail sale in this State of tangible personal property a tax equivalent to two (2) per cent of the purchase price paid or charged. . . ." By Section 5 the seller is to collect and remit the tax.

Paragraph (g) of Section 1 defines "retail sales" thus: " 'Sale at retail' means any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration."

Rule 57 promulgated by the State Auditor, so far as pertinent here, provides that "Dental laboratories . . . who . . . pursuant

to the dentist's instructions prepares and makes inlays, bridgework and false teeth, make sales for use or consumption within the meaning of the Act and must collect the tax on all such sales made and shall remit same to the State Auditor.''

The questions arise, is the plaintiff, under the conceded facts, engaged in the business of selling tangible personal property at retail to the user or consumer as defined in the Act, and does it make such sale when it fulfills its contract with the dentist? We think not.

■ The right of the taxing authority to levy a particular tax must be clearly authorized by the statute and such laws are to be construed strictly against the taxing authority. [State ex rel. Ford Motor Co. v. Gehner, 325 Mo. 24, 29, 27 S. W. (2d) 1, 3 (3).] Taxing statutes are construed strictly in favor of the taxpayer. [State ex rel. K. C. Power & Light Co. v. Smith, 342 Mo. 75, 80, 111 S. W. (2d) 513, 515 (5).] The statute does not impose a tax upon *all sales* of tangible personal property. The tax is imposed only upon sales ''for use or consumption and not for resale in any form as tangible personal property.'' ■ By statute, Section 655, Revised Statutes 1929 (Mo. Stat. Ann., p. 4899), words and phrases are to be taken in their ordinary and usual sense, except that ''technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import.'' We have said, ''One of the cardinal rules of statutory interpretation and construction is that words in common use are to be construed in their natural, plain and ordinary signification and acceptation.'' [Bellerive Inv. Co. v. Kansas City, 321 Mo. 969, 989, 13 S. W. (2d) 628, 638 (14).] The words ''use'' and ''consumption'' are not technical words having a peculiar meaning in law but words in common use and as employed in the statute must be given their plain, ordinary meaning.

Webster's New International Dictionary (2 Ed.), defines the noun ''use'' as ''Act of employing anything, or state of being employed; application; employment, as the use of a pen; his machines are in use;'' ''The fact of being used or employed habitually; usage, as, the wear and tear resulting from ordinary use.'' Other suggestive definitions do not seem here appropriate. Consumption is defined as ''Act or process of consuming; waste; decay, destruction; also the using up of anything, as food, heat or time.'' ''Consume'' is defined as meaning to destroy the substance of—to use up, expend, waste—to eat or drink up (food). Defining the word ''use'' as employed in a statute imposing a retailers' occupation tax the Illinois Supreme Court said in Revzan v. Nudelman, 370 Ill. 180, 185, ''As employed in the statute here under consideration 'use' means a long-continued possession and employment of a thing to the purpose for which it is adapted, as distinguished from a possession and employment that is merely temporary or occasional. The user or consumer contemplated by the statute is the ultimate user or consumer who will

use the articles as long as they last or until he desires to do away with them.''

In American Optical Co. v. Nudelman, 370 Ill. 627, the court had under consideration the question whether wholesale opticians who manufactured and delivered optical supplies upon prescription and orders from optometrists and oculists were required to pay the retailers occupation tax upon such sales. The court said the tax act laid a tax upon all persons engaged in the business of selling tangible personal property for use or consumption and not for sale. The Department of Finance had adopted a rule requiring such supply houses to pay the tax on sales of eyeglasses and other optical supplies delivered to optometrists and oculists. The plaintiff sued to enjoin collection of the tax and to recover sums previously paid under protest, and recovered, the judgment being affirmed by the Supreme Court. The court said, ''The complaint shows that after the manufacture and preparation of eyeglasses and other optical supplies to order, the plaintiffs deliver them to optometrists and oculists who, in turn, transfer them to their patients in accordance with their previous arrangements,'' and after referring to some prior decisions and pointing out that ''not all vendors of personal property are subject to the act,'' said:

''The sales made by plaintiff wholesalers are clearly not sales 'for use or consumption' by the optometrists and oculists who purchase them. In *Revzan v. Nudelman, ante* p. 180, where wholesalers of rubber heels and leather were involved, we had occasion to consider the meaning of those terms. There, we found 'consumption' to mean the use of economic goods resulting in the diminution or destruction of their utilities. At the same time we said 'use' as employed in the statute means long continued possession and employment of a thing to the purpose for which it is adapted, as distinguished from a possession that is merely temporary or occasional. Optometrists and oculists neither use nor consume eyeglasses and other optical upplies within the meaning of these definitions. As an incident of their services they merely furnish such articles to their patients in the same form in which they are supplied by the wholesale opticians.''

Respondents cite City of St. Louis v. Smith, 342 Mo. 317, 114 S. W. (2d) 1017. In that case, a suit for a declaratory judgment, the court said the question was whether the city was required to pay a sales tax on tangible personal property used in the construction of a street paving, a sewer, or a hospital, where the price to be paid by the city for such construction was fixed by contract between it and the contractor at a definite lump sum for the completed work. The contractor agreed to furnish all labor and material and to construct the improvement for a fixed sum. The court said it was necessary for the contractor to purchase and use the materials necessary to complete the work in order to be in position to deliver to the city a com-

pleted structure and "it cannot be said by the contractor that he resold the materials to the city for its use, and did not use or consume them in the performance of his contract." The court cited several cases from other jurisdictions holding that in such situation the contractor was the consumer of materials used in erecting a building. The court said "It was the inseparable commingling of labor and material that produced the finished product;" that the contractors used and consumed the materials and were primarily liable for the tax; and that the sale of the materials by the dealer to the contractors was the taxable transaction and it was the duty of the dealer to collect the tax from the contractors at the time the sale was made. We do not regard the case as in point. In the circumstances before us the plaintiff does not sell to the dentist materials to be used or consumed by the latter in fabricating the articles which he delivers to his patient.

Respondents cite Cusick v. Commonwealth (Ky.), 84 S. W. (2d) 14, and State Tax Commission v. Hopkins (Ala.), 176 So. 210. In the Cusick case the question was whether a photographer, in making and selling photographs to his customers, was subject to the Kentucky Gross Receipts Tax Law, which imposed a tax on merchants engaged in the sale of tangible personal property at retail. On behalf of the photographer it was contended that he was not engaged in business as a merchant but simply rendered service to his customer, which was not taxable. The court denied that contention, holding the transaction to be a sale of the photograph. Whether we accept that conclusion or not we do not think the decision applicable here, because the sale, if the transaction be so considered, was to the ultimate consumer. In State Tax Commission v. Hopkins, supra, it was held that the manufacture and sale of eyeglasses by an optometrist to his patients or customers was subject to the sales tax as a sale of tangible personal property under the Alabama statute, notwithstanding the value of the materials used in manufacturing the glasses was only about twenty per cent of the total price charged. But the person for whom the glasses were made and to whom they were delivered was held to be the consumer. The court said "What we are dealing with is the manufacture and sale of glasses fitted to the eyes of the ultimate consumer, that is subject to the tax."

Respondents also cite Pratt v. Miller, 109 Mo. 78, 18 S. W. 965; Schmidt v. Rozier, 121 Mo. App. 306, 98 S. W. 791; and Federal Brilliant Co. v. Nelson, 231 Mo. App. 1043, 84 S. W. (2d) 424. The first two involved the question whether the transactions referred to were sales within the statute of frauds or contracts for labor; the third, whether the contract was one for labor or service or a conditional sale under the law applicable to conditional sales. We think those cases are inapplicable here.

If the transaction between plaintiff and the dentist be regarded as a sale of the manufactured denture by the former to the latter, rather than the rendition of skilled service with the value of the materials used only incidental, we think nevertheless it is not subject to the sales tax. The tax is imposed upon sales for use or consumption. That means use or consumption by the purchaser. Respondents argue that the dentist uses or "consumes" the denture by placing it in his patient's mouth in the rendition of professional service to the patient. We think this contention untenable. The dentist orders the denture for his patient. The patient for whom it is procured and to whom the dentist transfers it is the person who uses it, by applying it to the purposes for which it is intended and who, we think must be regarded as the consumer. Whether or not the transaction between dentist and patient whereby the former transfers the denture to the latter is taxable is a question not before us. The judgment is reversed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.