Robert Fitzgerald **ARNOLD**, Jr.,
**Petitioner-Appellant**,

v.

**DIRECTOR OF DEPARTMENT OF REVENUE, Defendant-Respondent.**

No. 11330.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 18, 1980.

J. D. Baker, Belisle & Baker, Osceola, for petitioner-appellant.

John Ashcroft, Atty. Gen., Marjorie W. Haines, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

HOGAN, Judge.

The petitioner, a resident of Kansas, had his privilege of operating a motor vehicle suspended for a period of one year for refusal to submit to a chemical test for intoxication as provided by § 577.050, RSMo 1978, V.A.M.S., formerly codified as § 564.-444, RSMo 1969. Petitioner then applied to the Circuit Court of St. Clair County, the county in which he was arrested, for review of the order of revocation as authorized by § 577.050(2), RSMo 1978, V.A.M.S. Upon conclusion of the hearing, the trial court found: 1) that the petitioner was arrested by Trooper V. L. Conard; 2) that the trooper had reasonable grounds to believe the petitioner was driving a motor vehicle while in an intoxicated condition, and 3) that the petitioner refused to submit to a chemical breath test by smoking cigarettes repeatedly after being advised that such action would be construed as a refusal. Accordingly, the trial court denied relief and the petitioner appealed.

The sole question tendered on appeal is whether or not the petitioner "refused" to submit to a chemical test within the intent and meaning of § 577.010(1), RSMo 1978, V.A.M.S. The arresting officer testified that after he apprehended the petitioner, he ". . . advised [petitioner] of his rights on breathalyzer; he didn't have to take it, but if he didn't take it his license privilege would be suspended in Missouri for a year and he agreed to take the test . . . ." Petitioner was taken to the St. Clair County jail.

Before Trooper Conard started to administer the test, he ". . . told [petitioner] he couldn't smoke before the test, and he put the cigarette out at that time." Trooper Conard then "started to warm up the machine, which we have to wait 20 minutes with it, watching it for 20 minutes, and it was about two or three minutes before it was ready to go, why, [petitioner] said, 'I just got to have a cigarette', and he took out a cigarette and lit it and I told him at the time it would be a refusal. He said, 'All right, I don't refuse', and he put the cigarette back out and I started the time again, and about ten minutes later he took out another cigarette. I said, 'If you light that up I will turn it off and it is a refusal', . . . but he went ahead and lit the cigarette anyway." Trooper Conard testified without objection that the 20-minute warmup was required in order that the test be valid. The record is wholly devoid of proof the petitioner was told his smoking affected the result of the test; he was simply told not to smoke.

█ The petitioner invokes the decision of this court in *Hester v. Spradling*, 508 S.W.2d 194 (Mo.App.1974). The Director relies on *Duncan v. Safety Res. Unit, Dept. of Rev.*, 550 S.W.2d 619 (Mo.App.1977). Neither precedent is factually apposite. Whether there has been a "refusal" within the meaning of § 577.050, RSMo 1978, V.A.M.S., is doubtless a subjective matter, *Duncan*, supra, 550 S.W.2d at 621, but our Supreme Court has defined a "refusal" as being a volitional failure to do what is necessary in order that the chemical test can be performed. *Spradling v. Deimeke*, 528 S.W.2d 759, 766[13] (Mo.1975). We have consulted the Code of State Regulations. 13 CSR 50–140.040(3), which is applicable here, provides only that the operator of a breath analyzer device shall "adhere strictly to the operating procedures set forth by the manufacturer of the device for which he holds a permit," and that he "shall insure that the individual to be tested has ingested no alcoholic substance nor vomited within 15 minutes preceding collection of the sample of air to be tested." Nothing is said about smoking. 13 CSR 50–140.-050(1)(A) authorizes the use of six models of the breathalyzer device; the D.P.C. device; three models of the Gas Chromatograph device; the Alco-Tector device, and the Intoxilyzer device. No checklist was offered in evidence, as was the case in *State v. Crowell*, 560 S.W.2d 889 (Mo.App.1978). It would be absurd to say this court could supply the necessary adjudicative facts by

taking judicial notice of the operative requirements of each of the breath analyzer devices which have been authorized for use.

 There is no proof that petitioner knew by experience, admonition or otherwise that his smoking had any effect or indeed any rational connection with the chemical test to be administered. It follows that there was no volitional failure to do what was necessary in order that the test could be performed. Inasmuch as there is no substantial evidence to support a finding that petitioner refused to submit to the chemical breath test, the judgment of the trial court must be reversed. The Director is ordered to reinstate petitioner's privilege to operate a motor vehicle in Missouri, and to notify the appropriate Kansas authorities of his action.

BILLINGS, P. J., and MAUS, J., concur.