MOORE, Judge,
dissenting:
I respectfully dissent. The majority holds that the word “use” as legislatively defined is “an all-embracing concept which includes the act of consumption — the final use.” At first blush I would agree; however, the language used by the legislature throughout Chapter 212, Florida Statutes (1975) compels me to a contrary conclusion.
It is a cardinal rule of statutory construction that the legislature intended, and had knowledge of, the language it chose in drafting a statutory provision. Every word in a statute is presumed to have meaning and the legislature is presumed to have used only that amount of language which is necessary to convey its intent. Thus, there is a strong presumption against the legislature’s use of surplus language. As stated in 30 FlaJur., Statutes, Section 96:
Where the court uses exact words or exact phrases, though in different statutory provisions, the court may assume that they were intended to mean the same thing. By the same token, the use by the legislature of certain language in one instance and wholly different language in another indicates that different results were intended, and the courts have so presumed. Under this rule, where language is used in one section of a statute different from that used in other sections of the same chapter, it is presumed that the language is used with a different intent. Accordingly, the presence of a *947 provision in one portion of a statute and its absence from another are an argument against reading it as implied by the section from which it is omitted, (footnotes omitted).
Precise language is especially applicable to taxing statutes:
The intention of the legislature with respect to tax statutes must ordinarily be discovered from the language of the act. It is a cardinal rule that statutes imposing taxes must be clear and specific, and this rule governs their construction; therefore, unless a tax is imposed in clear and certain terms no tax is considered imposed. Taxes must, to be sustained in any case, come clearly within the letter of the statute, and may be collected only within the clear definite boundaries recited by statute. A statute may not be construed to impose a tax unless its terms definitely so provide. Similarly, classifications not clearly within the terms of a taxing statute will not be required to carry the burden imposed by it. This then prevents the taxation of any individual or activity unless it clearly appears that such person or activity belongs to a class made subject to the tax by legislative authority. It is presumed that the legislature has so shaped the law as to bring within it everything that was intended to be made subject to the tax. 31 Fla.Jur., Taxation, § 56.
Any doubts or ambiguities contained in a taxing statute are to be resolved in favor of the taxpayer. State v. Green, 132 So.2d 761 (Fla. 1961).
In discussing the issue before us, we must also bear in mind the purpose for which a use tax is imposed. As stated in United States Gypsum Company v. Green, 110 So.2d 409 (Fla.1959):
The primary function of the use tax is to complement the sales tax so as to make uniform the taxation of property subject to the tax, whether produced, purchased and used in this State, or produced and purchased in another state or country, but used in this state.
A use tax, such as the one involved here, is levied for the purpose of complementing the state sales tax. The tax was also developed as a protective measure for the benefit of retail merchants in the taxing forum who would be placed at a competitive disadvantage as against merchants and others who purchased their wares from a nontax-ing state. The objective of the tax is, of course, to produce revenues for the operation of government, and at the same time, insure that all of those who operate within the state will pay their fair share. Scripto, Inc. v. Carson, 105 So.2d 775 (Fla.1958), aff’d, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960).
With these principles thus stated, I now consider whether the products of the letter shop were created for appellant’s “use”, or whether they were created for appellant’s “consumption”. “Use” is defined in Section 212.02(8) of the same statutory scheme as “the exercise of any right or power over tangible personal property incident to the ownership thereof, or interest therein, except that it shall not include the sale at retail of that property in the regular course of business”. “Consumption”, though employed often in the language of Chapter 212, is never defined as a statutory term of art. This being the case, I must resort to the basic rule of statutory construction that when words of common usage are used in a statutory enactment, without being given a technical meaning by the enactment, such words should be construed in their plain and ordinary sense. Tatzel v. State, 356 So.2d 787 (Fla.1978); 30 Fla.Jur., Statutes, § 87. The supreme court of one of our sister states struggled with the definitions to be accorded the words “use” and “consumption” in Berry-Kofron Dental Laboratory v. Smith, 345 Mo. 922, 137 S.W.2d 452 (1940), where it stated:
We have said, “One of the cardinal rules of statutory interpretation and construction is that words in common use are to be construed in their natural, plain, and ordinary signification and acceptation.” Bellerive Inv. Co. v. Kansas City, 321 Mo. 969, 989, 13 S.W.2d 628, 638. The words “use” and “consumption” are not techni *948 cal words having a peculiar meaning in law but words in common use and as employed in the statute must be given their plain, ordinary meaning.
Webster’s New International Dictionary, 2nd Ed., defines the noun “use” as “Act of employing anything, or state of being employed; application; employment, as the use of a pen; his machines are in use;” “The fact of being used or employed habitually; usage, as, the wear and tear resulting from ordinary use.” Other suggestive definitions do not seem here appropriate. Consumption is defined as “Act or process of consuming; waste; decay, destruction; also the using up of anything, as food, heat or time.” “Consume” is defined as meaning to destroy the substance of — to use up, expend, waste, — to eat or drink up (food). Defining the word “use” as employed in a statute imposing a retailers’ occupation tax the Illinois Supreme Court said in Revzan v. Nudelman, 370 Ill. 180, 185, 18 N.E.2d 219, 222, “As employed in the statute here under consideration ‘use’ means a long-continued possession and employment of a thing to the purpose for which it is adapted, as distinguished from a possession * * * that is merely temporary or occasional. See, 137 S.W.2d at 454, 455.
The distinguishable definitions to be given these two words was also discussed in an annotation at 139 ALR 372, which states:
It is to be noted that many taxing statutes or ordinances define a sale at retail as a transfer of title to tangible personal property for consumption or use and not for resale. The word “use” as found in such statutory provisions has been defined as a long-continued possession and employment of a thing for the purpose for which it is adapted, as distinguished from a possession and employment that is merely temporary or occasional. Bradley Supply Co. v. Ames (1934) 359 Ill. 162, 194 N.E. 272; Revzan v. Nudelman (1938) 370 Ill. 180, 18 N.E.2d 219; P. H. Mallen Co. v. Department of Finance (1939) 372 Ill. 598, 25 N.E.2d 43. And see Howitt v. Street & S. Publications (1938) 276 N.Y. 345, 12 N.E.2d 435, wherein it is said: “We believe that the ordinary interpretation of the word ‘use’ is to assert possessory interest in the article for some length of time.”
And in Albuquerque Lumber Co. v. Bureau of Revenue (1937) 42 N.M. 58, 75 P.2d 334, the court said: “The term ‘consume’ or ‘consumption’ does not always imply an immediate destruction or ‘eating up’ or extermination; it may as well, and often does, contemplate the ultimate use to which all intermediate ones lead.” See, 139 ALR at 376-377.
Although we are bound by the rather broad definition of “use” contained within Section 212.02(8), I am not constrained to find that appellant’s employment of the paper products from its print shop constituted a “use” vis-a-vis a “consumption”. After considering the definitions of “consumption” cited above, I am more inclined to find that appellant’s activities in regard to the paper products constituted a “consumption” rather than a “use” of such products as broadly defined by Section 212.02(8). Certainly, the majority of appellant’s products were “used up”, “expended”, and indeed, “destroyed” by their immediate and initial utilization. Even those products that were not immediately expended were not available for long, continued use, but rather, they were only suitable for one-time usage. It is also significant that the hearing officer acknowledged in his recommended order that appellant “consumed” at least some of its own products. The hearing officer nonetheless determined that the definition of “use” in Section 212.02(8) was broad enough to encompass “consumption”. Were it not for the fact that the word “consumption” is also used throughout Chapter 212, I might have agreed with the hearing officer and the Department.
Sections 212.06(9) and 212.06(2)(e) employ the word “use” totally independently of the word “consumption”, and in the context of those sections, “use” does not convey a connotation that is synonymous with the common meaning of “consumption”. Conversely, in Section 212.08(1) the word “consump *949 tion” is used to convey its common, everyday meaning, i. e. the act or process of depleting or using up. The word “use” is conspicuously absent from that section. In Sections 212.05(2), 212.06(8), and 212.07(7), both the words “use” and “consumption” are utilized, but a reading of those sections indicates that the two words connote entirely different meanings. Furthermore, if “use” encompassed the definition of “consumption”, there would have been no need for the legislature to include the latter word, since its meaning would have been conveyed once the former word was used in the statutory provision. Obviously, the legislature intended that the two words should have different meanings.
In summary, the words “use” and “consumption” are employed together in many different subsections of Section 212.06. This sharply and distinctly dramatizes the absence of the word “consumption” in Section 212.06(l)(b). If the legislature had intended that section to impose a tax on the consumption as well as the use of tangible personal property, it could have employed language which would have removed all susceptibility to vagueness. The common, linguistic meaning of consumption is the act or process of using up, depleting or expending. This is clearly the purpose to which the appellant employed the manufacture of its disposable paper products.
If the word “use” was intended by the legislature to encompass “consumption”, the legislature would not have used the two words jointly in some sections of the revenue statutes and separately in others. The two words do not convey the same meaning, nor is it evident that the legislature intended for them to do so. I would hold that the printed paper products were consumed, visa-vis used, by the appellant, and as such, were not subject to the use tax. This holding is consistent with the purpose for which use taxes are imposed and with all principles of statutory construction. Accordingly, I would reverse.