**ODORITE OF AMERICA, INC.,**
Petitioner-Appellant,

v.

**DIRECTOR OF REVENUE,**
Respondent.

Nos. 67652, 67653.

Supreme Court of Missouri,
En Banc.

Aug. 1, 1986.

James R. Schurman, Kansas City, Solbert M. Wasserstrom, Kansas City, for petitioner-appellant.

William L. Webster, Atty. Gen., Melodie A. Powell, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Chief Justice.

Odorite of America, Inc., seeks reversal of a decision upholding consolidated assessments of sales tax, including interest and penalties, made by the Department of Revenue for the years 1972 through 1976 and years 1977 and 1978. Petitioner asserts: its sales are exempt from retail sales tax under 144.030.3(1), RSMo 1978, because the sales are for resale and not for the use and consumption by its distributors; assessments for the period prior to October 27, 1975, are barred by the two-year statute of limitations; penalties should not have been assessed because it is not guilty of neglect, evasion or fraudulent intent; and if accountable for sales tax, the assessments for the years 1977 and 1978 should be limited to sales made within Missouri.

A decision of the Commission can be upheld only to the extent authorized by law and supported by competent and substantial evidence upon the whole record. *Fostaire Harbor, Inc. v. Director of Rev.*, 679 S.W.2d 272 (Mo. banc 1984). The decision is affirmed in part and reversed in part and remanded for further proceedings.

Odorite, a Missouri corporation, is engaged in the business of manufacturing air deodorant machines and deodorant chemicals which are sold to distributors. The deodorizers are placed in service by distributors, each of whom has an exclusive territory under a written Distributorship Agreement. The distributors install the deodoriz-

ing machines in customers' restroom areas, and make periodic visits to replenish chemicals in the deodorizing machines and to clean the urinals and toilets.

In 1970, Odorite relocated to Kansas City, Missouri. Robert Demming, its vice president, applied to the Missouri Department of Revenue for a sales tax number. The application form was completed on August 26, 1970. In response to Question 8: "Kind of Business," the answer was "Manufacturer of Deodorants." In response to Question 11: "Do you sell at retail, wholesale or both?", the answer was "Wholesale." In a letter dated September 17, 1970, Mr. Norris Gale, Supervisor of the Sales and Use Tax Unit of the Department of Revenue responded:

In accordance with the information provided on your application form, the manufacturer's code number which appears in the above caption has been assigned to you. This number may be filed with your suppliers as evidence that materials which become a component part of your manufactured product may be purchased tax exempt.

This number is not to be used for purchasing as tax exempt any expendable item used to conduct your business but is for the sole purpose as set forth above.

Accordingly, Odorite filed no sales and use tax returns.

On October 18, 1974, Odorite received an inquiry from the Department seeking current information on its tax status, together with an application identical to the one sent in 1970. Odorite answered Questions 8 and 11 as before. In response to this updated application, Odorite received a new manufacturer's code number and was instructed that it would be necessary to file quarterly sales and use tax returns for informational purposes.

Odorite thereafter filed a return for the fourth quarter of 1974 showing gross sales of $131,547.95 and an offsetting deduction for the same amount, listing the sales as "sales for resale." Therefore, the return showed zero taxable income. However, Mr. Demming received a billing for sales tax due from the Department for the fourth quarter. On April 18, 1975, Odorite's secretary and attorney, Mr. I.I. Ozar, responded to the billing:

Please be advised that I represent Odorite of America, Inc. which business is the manufacturing of deodorant chemicals which are distributed and sold for use in servicing deodorizing equipment located throughout the United States and South America. None of the products manufactured and distributed by my clients are ever sold for retail purposes and are used strictly by Odorite Distributors in deodorizing devices which are placed in restrooms and licensee manufacturers in export trade to foreign countries.

This Company has never been subject to sales and use tax for the reason above stated; that all products manufactured are never sold for retail sales, and are sold only to distributors.

We are enclosing herewith combined sales and use tax for the period covering October 31, through December, 1974, and January to March, 1975. My clients were sent a bill alleging sales tax due. I would appreciate it if you would review your files, and, if necessary, we will furnish you any affidavits or further information necessary to establish our exemption from sales and use tax.

\* \* \* \* \* \*

On August 1, 1975, the Department cancelled the billing based on the information presented.

Prior to August 1, 1975, Odorite had filed its return for the first quarter of 1975 showing sales of $137,707.37, with an equal offsetting deduction based on "sales for resale." Again, the Department billed Odorite for sales tax due. Mr. Demming returned the billing together with copies of the earlier correspondence cancelling the earlier billing. On September 8, 1975, the Department cancelled the second billing.

Odorite continued to file sales tax returns. Each of those returns listed gross

sales, but claimed an equal offsetting deduction based on "sales for resales."

Mr. Demming was also the owner of an Odorite distributorship, Midstate Odorite Company. In 1976, the Department audited Midstate on the theory it was making retail sales to its customers. During the audit Mr. Demming explained to the Department that the distributorship did not resell any products purchased from Odorite, but that these products are used and consumed in connection with services rendered to customers. The Department concluded that Midstate Odorite was not subject to Missouri sales tax and the assessment for sales tax against the distributorship was cancelled.

Shortly after the conclusion of the Midstate audit, the Department began an audit of Odorite. The audit resulted in a determination that Odorite owed sales tax on all sales made to Odorite distributorships for the years 1972 through 1976 in the amount of $12,110.34 together with penalties and interest to October 31, 1977, a total assessment of $17,635.03. At the reassessment hearing, the Department found that Odorite owed $20,088.37, including penalty and interest to June 30, 1979.

While the assessment for 1972 through 1976 was under review, the Department audited Odorite for the tax years 1977 and 1978. An assessment was made showing total tax on gross sales and interest due of $45,342.70; no penalty was assessed.

Odorite appealed both assessments to the Administrative Hearing Commission and the Commission affirmed the assessments. In a consolidated appeal, the Commission concluded: section 144.020.1, RSMo 1978, imposes a tax upon all sellers for the privilege of engaging in the business of selling tangible personal property at retail in Missouri; the deodorizers and chemicals have not been sold for resale, but are sold to distributors for their use in servicing their customers and are therefore subject to tax under section 144.020.1; the Department is not barred by the two-year statute of limitations in section 144.220, RSMo 1978, because (1) Odorite consciously refused to file a return during the tax years 1972 and 1973 and the first three quarters of 1974, and (2) for the period October 1, 1974, through 1978, Odorite's returns as filed contained misrepresentations of fact and were fraudulent in that sales were reported as "sales for resales" when they were actually sales to Odorite's distributors for use in their businesses; and, section 144.030.1, RSMo 1978, which provides exemptions of sales in interstate commerce, has no application in this case because the sales contained in these assessments are sales made and delivered in Missouri.

I.

The first question is whether Odorite sells deodorizers and chemicals at retail for the use and consumption by its distributors and not for resale in any form. Appellant contends that the purpose of its merchandising program is the promotion and sale of its deodorant chemicals, and that within the meaning of the phrase "for resale in any form," the distributors' customers are the ultimate consumer of the products. Respondent asserts that Odorite's sales to its distributors constitute retail sales because the distributors use the merchandise in the performance of services to customers.

Section 144.020.1 provides: "A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state."

Section 144.010.1(8), RSMo 1978, defines "Sale at retail" as: "any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration...."

The "Standard Distributorship Agreement for Odorite Service" between Odorite and its distributors provides, in pertinent part:

WHEREAS, Odorite is established and has had 40 years of experience in the

business of deodorizing, germ, pest control, and bacteria control, air pollution and sanitation services;

\*    \*    \*    \*    \*    \*.

## PART I

(1) APPOINTMENT AND TERRITORY: Odorite hereby confers upon the Distributor the exclusive right to dispense and render its Odorite Service for deodorizing, germ, pest control, and bacteria control, air pollution and sanitation services (all or anyone of which is sometimes referred herein as "Odorite Service") within the territory of:

\*    \*    \*    \*    \*    \*

## PART II

\*    \*    \*    \*    \*    \*

(11) EQUIPMENT, FIXTURES, AND DISPENSERS: The Distributor shall purchase and use, in connection with the Odorite Service to be rendered pursuant to this contract, only such fixtures, equipment, and dispensers, and in such combinations or package units in all customer locations as may be prescribed by Odorite. Distributor shall obtain, lease, or purchase the same only from Odorite and shall order same on forms provided or approved by Odorite. Distributor shall pay for such equipment, fixtures, and dispensers, the list price, subject to changes as published from time to time.

(12) SUPPLIES: Distributor shall procure all supplies in the nature of chemicals, block, stick-type, and liquid refills, disinfectants and the like, used in any manner in connection with the Odorite Service which is the subject of this agreement, only from Odorite, or from a source approved in writing by Odorite to assure standardization and control of Odorite service....

\*    \*    \*    \*    \*    \*

(16) INSTALLATIONS: The Distributor shall install all fixtures, dispensers, and the like in accordance with the manner prescribed by Odorite, and shall maintain the same in such manner as Odorite may reasonably require.

\*    \*    \*    \*    \*    \*

(30) DISCONTINUANCE OF ODORITE NAME: In the event that the distributorship shall terminate or shall be terminated for any reason, Distributor covenants and agrees immediately to eliminate the word "Odorite" from its corporate, business or trade name and from all billheads, letterheads, advertising, stationery and other printed matter, and from all dispensers and equipment owned or controlled by Distributor, and to that end.

The subject of this agreement is the performance of Odorite services by the distributors. The agreement provides that the distributors shall use only fixtures, equipment and dispensers purchased from Odorite; and it provides that the distributor shall procure from Odorite all chemicals, disinfectants and the like used in any manner in connection with the Odorite service.

Appellant argues that the Commission determined the distributors did not make a resale to their customers because the distributors did not make a division of monthly proceeds between the sale of chemicals and the service performed. Appellant asserts that the failure to make such a division is of no importance because an appropriate allocation between products and service can still be made for sales tax purposes as is done in Kansas and Iowa. This argument is nonpersuasive. Nowhere does the distributorship agreement permit the distributors to sell Odorite chemicals and supplies to their customers; the agreement provides only for use of the products in the performance of their service.

The agreement between the distributor and the customer provides that the customer pays the distributor a monthly service charge. The distributor agrees to service the dispenser, to replenish chemicals in the dispenser, and to spray the urinals and stools in the restroom. At all times, the equipment purchased from Odorite remains the property of the distributor.

■ This Court affirms, therefore, the decision that Odorite is subject to the sales tax imposed by section 144.020 because it sells products which are used and consumed by its distributors in the normal conduct and performance of their distributorship services. *See Kilbane v. Department of Rev.*, 544 S.W.2d 9, 11–12 (Mo. banc 1976); *City of St. Louis v. Smith*, 342 Mo. 317, 114 S.W.2d 1017 (1937).

Appellant relies on *Berry-Kofron Dental Lab. Co. v. Smith*, 345 Mo. 922, 137 S.W.2d 452 (1940), where this Court determined that under the sales tax law a dental laboratory was not liable for sales tax on sales to dentists of crown and bridgework used for placement in the mouths of patients. The sales were not "sales at retail" because the use and consumption of the products were by the patients, not by the dentists. *Id.*, 137 S.W.2d at 456. In that case the dentists did not retain ownership over the bridgework and crowns after they were placed in the patient's mouth; here the distributors do retain ownership over the dispensers and supplies after they are placed in service in the customers' restrooms. The dentists did not use and consume the laboratory products during the performance of the dental service; here appellant's products are used and consumed by the distributors during the life of the service contract, and, in addition, supplies are replenished throughout the service term. The case is thus distinguished. *See also Kilbane.*, 544 S.W.2d at 10.

## II.

The second question is the application, if so, of the two-year statute of limitations.

The assessment for the years 1972 through 1976 was made on October 27, 1977. Appellant asserts that if Odorite's sales are retail sales and therefore subject to sales tax under section 144.020, respondent is barred by the two-year statute of limitations from assessing tax prior to October 27, 1975. Section 144.220 provides: "Except in the case of a fraudulent return, or neglect or refusal to make a return, every notice of additional amount proposed to be assessed hereunder shall be mailed to the person within two years after the return was filed or was required to be filed."

## A.

For the years 1972, 1973 and the first three quarters of 1974 Odorite filed no returns. The Commission concluded that for this period Odorite was subject to assessment on the theory that its failure to file constituted a refusal to file returns. The Commission found: that the letter assigning a manufacturer's code number was based on Odorite's application which led respondent to believe only sales at wholesale were being made; respondent's employee testified that had Question 11 been answered "retail sales" then a sales tax license would have been issued and reporting forms sent; and, although no forms were sent to Odorite, it is not relieved of its duty to collect and report sales tax.

■ To lift the bar of the two-year limitation, a failure to file returns must rise to the level of a conscious refusal to file returns. *Lora v. Director of Rev.*, 618 S.W.2d 630 (Mo.1981). A conscious refusal to file returns is more than a failure to file returns; it is an intentional, volitional failure to file returns. *Cf. Spradling v. Deimeke*, 528 S.W.2d 759, 766 [13] (Mo.1975); *Arnold v. Department of Rev.*, 593 S.W.2d 624, 625 (Mo.App.1980).

The record shows that after moving its operations to Missouri, Odorite sought assistance from respondent in determining whether it was liable for sales tax and appellant was advised to fill out an application. Odorite completed the application and returned it. Acting under advice of counsel, Odorite represented that it was in the business of manufacturing and making wholesale sales; and, in fact, appellant is a manufacturing concern.

Odorite has completed and filed all forms sent by respondent. Because Odorite is a manufacturing concern, it is reasonable for it to believe that its transactions were exempt. *See* section 144.030.3(1), RSMo 1978. This is particularly so after Odorite re-

ceived a manufacturer's code number. Odorite's letter of April 18, 1975, written by counsel, evidences a bona fide belief that as a manufacturer it is tax exempt. Even before this Court, as noted earlier, appellant maintains that it is making only sales at wholesale. Accordingly, Odorite believed it did not have to file returns because taxable sales were not made. *See* § 144.100 RSMo 1978. There is no indication that Odorite acted in bad faith in not filing returns.

■ The Commission concluded that failure to collect and report sales tax under the mistaken belief or advice of counsel that no tax is due does not excuse Odorite. Neither can it be said that such failure is a conscious refusal to file returns as the exception is used in section 144.220; and this Court holds that respondent is barred by the two-year limitation period from assessing sales tax for the years 1972, 1973 and the first three quarters of 1974.

### B.

For the period from October 1, 1974, through 1976, Odorite filed sales tax returns; the Commission concluded that the two-year limitation does not apply to any portion of this period because the returns filed were fraudulent.

■ Whether a tax return is fraudulent is to be determined by considering all the facts and circumstances of each case. *Wood v. Robertson,* 245 S.W.2d 80, 82 (Mo. 1952); *Excel Drug Co. v. Department of Rev.,* 609 S.W.2d 404, 408 (Mo. banc 1980). The elements of fraud include a positive, intentional deceit or subtle device to escape the sales tax. *Excel Drug Co.,* 609 S.W.2d at 407; *State ex rel. St. Louis Die Casting Corp. v. Morris,* 358 Mo. 1170, 219 S.W.2d 359, 362 (1949).

In concluding that fraudulent returns were filed, the Commission referred to the 1970 and 1974 applications where appellant represented the type of sales to be "wholesale"; the deduction on the filed returns based on "sales for resale"; and the content of the April 18, 1975, letter from appellant's attorney, Mr. Ozar, which stated that no retail sales were made and at the same time represented that all products sold by Odorite were used by the distributors in the performance of Odorite Services.

■ A misrepresentation as to a question of law is not fraud. *White v. Mulvania,* 575 S.W.2d 184 (Mo. banc 1978); *Frederick v. Bensen Aircraft Corp.,* 436 S.W.2d 765, 770 (Mo.App.1968). And the question of what constitutes a "wholesale sale" or "sale for resale" or "sale at retail" is a question of law. *See* § 144.010.1(8); *Kilbane v. Department of Rev.; Berry-Kofron Dental Lab. Co. v. Smith.* "There are two exceptions to the rule that one is not permitted to say that he has been misled as to a matter of law ...: where there exists a confidential relationship and where one party is possessed or claims to be possessed of superior knowledge of the law and takes advantage of the other party's ignorance of the law to mislead him." *White,* 575 S.W.2d at 192. Odorite is not in a confidential relationship with respondent; nor does it purport to possess superior knowledge of the sales tax law. Therefore fraud cannot be predicated on the representations that the sales were wholesale sales.

The Commission also rested its decision on the circumstance that Mr. Demming, as the owner of his Midstate distributorship, took a position inconsistent with that which he took as an officer of Odorite. Mr. Demming testified that during the Midstate Odorite audit, he took the position that he would pay sales tax on the chemicals used in deodorizing machines in Missouri as was done in Iowa and Kansas, but argued that the balance of the money received from customers was for services rather than for products. This argument that sales tax due depends on the respective percentages of labor and material sold was rejected by this Court in *Kilbane,* 544 S.W.2d at 12; however, it is not necessarily inconsistent with the position taken by appellant. Such action does not amount to a positive, intentional deceit or subtle device to avoid the sales tax.

This assessment is not a situation where the taxpayer under-reported income. *See Excel Drug Co.*, 609 S.W.2d at 408. Odorite's letter of April 18, 1975, protesting the tax assessment concluded with a good faith offer to furnish any affidavit or further information necessary to establish appellant's exemption from sales tax, and respondent did not assess a penalty for fraud or evasion. *See* § 144.500, RSMo 1978. Respondent's auditor testified that he was not asserting that fraudulent returns had been filed. The conclusion that Odorite filed fraudulent returns is not supported by substantial evidence. *See State ex rel. St. Louis Die Casting Corp*, 219 S.W.2d at 362.

### C.

Accordingly, this Court holds that the exceptions cited by the Commission do not apply; the two-year statute of limitations governs, and appellant is liable only for that portion of the assessment not barred by section 144.220.

### III.

Respondent assessed a 10 percent penalty against Odorite for the years 1972, 1973 and the first three quarters of 1974. Section 144.250.1, RSMo 1978, provides:

Except in cases of fraud or evasion, if a person neglects or refuses to make a return and payment as required by sections 144.010 to 144.510, the director of revenue shall make an estimate based upon any information in his possession or that may come into his possession of the amount of the gross receipts of the delinquent for the period in respect to which he failed to make return and payment, and upon the basis of said estimated amount compute and assess the tax payable by the delinquent, adding to such sum a penalty equal to ten percent thereof.

■ This section authorizes a 10 percent penalty if the taxpayer "neglects or refuses" to make a return. These terms shall be interpreted consistently with the interpretation placed on the same terms in section 144.220. *Lora v. Director of Rev.*, 618 S.W.2d at 634. Because the evidence is insufficient to show that Odorite neglected or consciously refused to file a return, there was no basis for the assessment of a penalty.

### IV.

Appellant asserts that the 1977 and 1978 assessment should be limited to sales made in Missouri. Section 144.030.1 provides:

There is hereby specifically exempted from the provisions of sections 144.010 to 144.510 and from the computation of the tax levied, assessed or payable under sections 144.010 to 144.510 such retail sales as may be made in commerce between this state and any other state of the United States, or between this state and any foreign country, and any retail sale which the state of Missouri is prohibited from taxing under the constitution or laws of the United States of America, and such retail sales of tangible personal property which the general assembly of the state of Missouri is prohibited from taxing or further taxing by the constitution of this state.

Respondent assessed a $13,553.27 tax on the 1977 gross sales figures of $451,775.80 and a $13,707.70 tax on the 1978 gross sales figure of $456,923.22. The Commission found that respondent only assessed tax on sales made in Missouri and delivered to a distributor in Missouri. With respect to the assessment for the years 1977 and 1978, however, the Commission's finding is unsupported by the record. The audit records, as well as the testimony from Mr. Demming, show that the gross sales figure, upon which the 1977 and 1978 assessment was made, includes sales made and delivered outside of Missouri.

■ Section 144.030.1 applies. *See Western Trailer Service, Inc. v. LePage*, 575 S.W.2d 173 (Mo. banc 1978). To the extent the Commission failed to delineate between the assessment for the period 1972–1976 and the assessment for the period 1977–1978 with respect to deleting non-

Missouri sales from the latter period, the Commission erred. The assessment must be modified to reflect sales made and delivered in Missouri alone.

Accordingly, the decision of the Commission is affirmed in part and reversed in part and the case is remanded for determination of assessments consistent with this opinion.

All concur.