(No. 24865.—

J. Revzan *et al.* Appellees, *vs.* S. L. Nudelman, Director of Finance, *et al.* Appellants.

*Opinion filed December 19, 1938.*

OTTO KERNER, Attorney General, (MONTGOMERY S. WINNING, and MORTIMER PORGES, of counsel,) for appellants:

KOTIN & GAINER, (GEORGE N. KOTIN, of counsel,) for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

J. Revzan and Allen Skolnik filed a complaint in the circuit court of Cook county against S. L. Nudelman, Director of Finance, and John C. Martin, State Treasurer, to enjoin the collection of taxes under the Retailers' Occupation Tax act and to recover payments made under protest. The Director of Finance and the State Treasurer appeal from a decree granting the relief prayed by the complaint.

The facts are stipulated. Plaintiffs are engaged in the city of Chicago in the wholesale leather business and the sale of leather, leather findings and rubber heels to shoemakers and shoe repairers in this State. Taxes on sale of leather and rubber heels to repairers were paid under protest. It was stipulated that the cost to shoe repairmen of materials used by them in repairing shoes is thirty per cent of the price charged by them for repairs; that all persons wishing to have shoes repaired usually make contracts with the shoe repairmen for the repair of shoes, in each case for a lump-sum price; that they do not usually select the particular leather or rubber heels to be used by the repairmen but merely direct the making of the repairs desired; that the repairman does not buy the material for use on a

particular pair of shoes of a definite customer, but buys it in lots, keeps it in stock and uses it whenever he gets a customer. On the trial it was agreed that the stipulated facts should constitute all the evidence in the case. The fact it was not denied that all incidental material which goes into the process of repairing shoes, except sole leather and rubber heels, was subject to the tax, is immaterial to the question. The issue, here, is limited to sales by plaintiffs of sole leather and rubber heels to repairmen.

The Retailers' Occupation Tax act (Ill. Rev. Stat. 1937, chap. 120, par. 440, *et seq.*) imposes a tax upon persons engaged in the business of selling tangible personal property at retail in this State, at the rate of three per cent of the gross receipts from such sales in this State of tangible personal property made in the course of such business. Section 1 of the act provides: " 'Sale at retail' means any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration."

Rule 13 of the Department of Finance announces that persons engaged in the business of repairing shoes are deemed primarily to render service; that they are purchasers for use or consumption of tangible personal property incidentally used by them in the rendering of such service; that, consequently, the sales of sole leather, rubber heels, thread, nails and other findings to shoe repairmen for their use in connection with the rendering of such service are sales at retail within the meaning of the act, and receipts of shoe repairmen from the service of shoe repairing or rebuilding are not subject to tax.

Defendants claim that repairmen are not engaged in the business of selling tangible personal property, but are engaged in the business of rendering a repair service, in the performance of which they use or consume leather and rubber heels, and are not liable for a tax under the act,

and, therefore, that plaintiffs' sales of sole leather and rubber heels to them are for use or consumption, within the meaning of the act. Several decisions of this court are cited in support of the proposition that shoe repairmen are not within the terms of the statute: *Burgess* v. *Ames,* 359 Ill. 427 (persons engaged in furnishing photostats and blue prints); *Adair Printing Co.* v. *Ames,* 364 id. 342 (job printers); *A. B. C. Electrotype Co.* v. *Ames,* id. 360 (electrotypers, stereotypers and matrix makers); *Babcock* v. *Nudelman,* 367 Ill. 626 (optometrists furnishing eyeglasses). The last expression of this court on the question of liability of vendors is to be found in *Herlihy Mid-Continent Co.* v. *Nudelman,* 367 Ill. 600. That case involved the liability of contractors who installed sewers and sewer-treatment works for the Sanitary District of Chicago requiring the use of sand, gravel, cement and steel. We held there was no transfer of tangible personal property, within the meaning of the act, by the contractor, and he was not subject to the tax. We said that the Retailers' Occupation tax is not a privilege tax imposed upon purchasers, like the Motor Fuel tax. It is not a property tax upon the items sold, nor is it a sales tax. It is an occupation tax upon a class of vendors and is measured by the gross receipts from their sales. In the course of the opinion we said: "The question to be decided, and the one involved in most of the previous cases under this act, is the exact type of vendor affected by it. * *. * Thus, the class of vendors subject to the act must be determined from a construction of the provisions of the act itself. * * * Not all vendors of personal property are subject to the act, however."

In the first place, it must be remembered that the act imposes a tax only upon persons engaged in the business of selling at retail. No other class is included in its provisions, either expressly or by necessary implication. Defendants insist that the sole leather and rubber heels sold by plaintiffs to repairmen are retail sales, on the theory that

such materials are used or consumed by the repairmen. This brings us to a consideration of the meaning of the terms "for use or consumption." In construing a statute it is fundamental that taxing laws must be strictly construed. They are not to be extended by implication beyond the clear import of the language used. In case of doubt they are construed most strongly against the government and in favor of the taxpayer. Strict construction does not require that the words be given the narrowest meaning of which they are susceptible, and words of the act are to be given their full meaning. The proper office of the rule is to help solve ambiguities, not to compel an immediate surrender to them. Where words having more than one meaning are used in a statute they should be given that meaning which comports with the usual and popular meaning attached to the words employed. *Bradley Supply Co.* v. *Ames,* 359 Ill. 162; *Peoples Gas Light and Coke Co.* v. *Ames,* id. 152.

Webster's Unabridged Dictionary defines "consume" as to use up; expend, waste, exhaust. It defines "consumption" as the use of economic goods resulting in the diminution or destruction of their utilities. "Consumption may consist in the active use of goods in such a manner as to accomplish their direct and immediate destruction, as in eating food, wearing clothes or burning fuel," is given as an example. Under the rules of statutory construction, the term "consumption" must be interpreted in its usual and popular meaning,—*i. e.,* destruction by use. Under the definition and the rule of law, it cannot be logically said that shoe repairmen "consume" rubber heels or leather soles. The repair operation converts them into a part of the shoe without appreciable diminution. No question is raised as to small fragments wasted in repairing operations and, under the maxim *"de minimis non curat lex,"* this would have no bearing on the question. The term "use" also has a usual and popular meaning. Webster's Dictionary defines the word "use" as an act of employing or state of being

employed; to convert to one's service; to employ. The tools, such as hammers, awls, sewing-machines, and lasts of a repairman, tools of other artisans, and store fixtures in merchandising establishments, are, in the popular and usual sense, "used" by them. As employed in the statute here under consideration "use" means a long-continued possession and employment of a thing to the purpose for which it is adapted, as distinguished from a possession and employment that is merely temporary or occasional. The user or consumer contemplated by the statute is the ultimate user or consumer who will use the articles as long as they last or until he desires to do away with them. (*Bradley Supply Co.* v. *Ames, supra.*) In that case we held that vendors of plumbing and heating supplies to contractors who install them on premises of the contractor's customers are not vendors for consumption or use by the contractor and are not liable for the tax imposed by the act. Some of the supplies were delivered to locations where buildings were being erected or repaired, and other deliveries were made to the contractors' places of business. We pointed out that the vendors had no contractual relations with the owners of the premises, who were the ultimate users or consumers, and that the transfers from the vendors to the contractors were not for use or consumption. There is a stronger reason for applying the doctrine in this case because, here, the materials are delivered only to the shoe repairmen.

In the *Herlihy case, supra,* in passing on the liability of the contractor, we said that in the *Bradley case* the property transferred retained its original form, while in the *Herlihy case,* the sand, gravel, etc. lost its identity, and that what the Sanitary District of Chicago bought in that case was completed sewers and treatment works ready for use, and the contractor was not liable. That holding, so far as shoe repairmen are concerned, is analogous to the facts here. But the question in that case concerned only the liability of the contractor and does not purport to deal with the liability

of a vendor who sells to a contractor. The question before us is not the liability or non-liability of shoe repairmen, and if it be conceded that they do not come within the statute, it does not follow that such a determination necessarily shows a liability of plaintiffs. In order to impose a tax on anybody under the act, the facts must bring such party within its terms, without regard to the non-liability of anybody else. To hold that one party is liable to a tax because another party is not liable, would be an anomaly in the law. There is nothing in the *Herlihy case* which detracts from our holding in the *Bradley case* that the vendor selling to the contractor is not within the terms of the act. That holding is applicable here. We hold the transfers are not taxable under the act.

There is another reason why plaintiffs are not liable. One of the definitions of the word "retail" found in Webster's Dictionary is "To sell directly to the consumer; as to retail cloth or groceries." The same author defines "wholesale" as selling to retailers or jobbers rather than consumers. Our holdings in the *Herlihy case, supra,* and *Franklin County Coal Co.* v. *Ames,* 359 Ill. 178, that the quantity sold is no test under the statutory definition, are not applicable here. In the *Franklin County Coal Co. case,* sales of coal in carload lots were made to single consumers. In the *Herlihy case,* we said it is the purpose for which the property is sold that is determinative, in addition to our holding already quoted above that the question to be decided is the exact type of vendor affected by the act. Under the stipulated facts plaintiffs do not come within the term "retailer" as contemplated by the act.

The decree of the circuit court is affirmed.

*Decree affirmed.*