D.J. WITHERSPOON, APPELLANT, V. SIDES CONSTRUCTION CO., INC., A CORPORATION, ET AL., APPELLEES.

362 N.W.2d 35

Filed February 1, 1985.    No. 83-661.

118

Cynthia G. Irmer of Matthews & Cannon, P.C., for appellant.

Lyman L. Larsen and John D. Hartigan, Jr., of Kennedy, Holland, DeLacy & Svoboda, for appellee Sides Construction.

Eugene P. Welch and John W. Iliff of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellee Stanley J. How & Associates.

Judith A. Schweikart of Kutak Rock & Huie, for appellee McWane Cast Iron Pipe.

Dean F. Suing and Moira B. White of Katskee & Henatsch, for appellee Raymond G. Alvine & Associates.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Plaintiff-appellant, D.J. Witherspoon, suffered damages when the pipe supplying water to his house broke. As a consequence, he brought suit against the manufacturer of the pipe, McWane Cast Iron Pipe Co., Inc.; the general contractor,

Sides Construction Co., Inc.; the architect, Stanley J. How & Associates, Inc.; the engineer, Raymond G. Alvine & Associates; and the plumbing subcontractor, J.H. Martig, Inc., together with its trustee in bankruptcy, James J. Stumpf. The defendants-appellees McWane, Sides, How, and Alvine each moved for summary judgment on the ground that Witherspoon's action was time barred. The district court sustained each of those motions and dismissed the action as to all the movants. We affirm as to Alvine, and we reverse and remand for further proceedings as to McWane, Sides, and How.

## Facts and Posture of Case

The primary purpose of the summary judgment procedure is to pierce the allegations made in the pleadings and show conclusively that the controlling facts are other than as pled, and thus resolve, without the expense and delay of trial, those cases where there exists no genuine issue either as to any material fact or as to the ultimate inferences to be drawn therefrom, and the moving party is entitled to judgment as a matter of law. Neb. Rev. Stat. § 25-1332 (Reissue 1979); *Cummings v. Curtiss, ante* p. 106, 361 N.W.2d 508 (1985); *Gilbreath v. Ridgeway*, 218 Neb. 822, 360 N.W.2d 474 (1984); *Stromsburg Bank v. Nuttelman*, 218 Neb. 687, 358 N.W.2d 746 (1984); *Straub v. American Bowling Congress*, 218 Neb. 241, 353 N.W.2d 11 (1984); *Galyen Petroleum Co. v. Hixson*, 213 Neb. 683, 331 N.W.2d 1 (1983); *Mutual Benefit Life Ins. Co. v. Chisholm*, 213 Neb. 301, 329 N.W.2d 103 (1983). In considering a motion for summary judgment, the evidence is to be viewed most favorably to the party against whom the motion is directed, giving to that party the benefit of all the favorable inferences which may reasonably be drawn from the evidence. *McHenry v. First Nat. Bank*, 216 Neb. 580, 344 N.W.2d 652 (1984); *Strong v. K & K Investments*, 216 Neb. 370, 343 N.W.2d 912 (1984). Since the party moving for summary judgment has the burden of showing that no genuine issue as to any material fact exists, that party must therefore produce enough evidence to demonstrate his entitlement to a judgment if the evidence remains uncontroverted, after which

the burden of producing contrary evidence shifts to the party opposing the motion. *Bailey v. City of North Platte,* 218 Neb. 810, 359 N.W.2d 766 (1984); *Hanzlik v. Paustian,* 211 Neb. 322, 318 N.W.2d 712 (1982), *appeal after remand* 216 Neb. 575, 344 N.W.2d 649 (1984).

The evidence, viewed in accordance with the applicable rule, establishes that in 1968 or 1969 Witherspoon retained How to design a house to be constructed on land Witherspoon owned. How then selected Alvine to be the engineer for the project. Witherspoon next contracted with Sides to build the house according to the plans and specifications provided by How and Alvine. Sides engaged Martig to install the plumbing, including a 3-inch water supply pipe required by the plans and specifications. The water utility required that a ductile iron pipe be used; however, a cast iron pipe fabricated by McWane was installed. Burial of the pipe on Witherspoon's land was completed in September of 1969, and the pipe provided water for construction purposes from October 1, 1969. Construction of the house was completed around Christmas of 1970. Because the cast iron pipe had been installed without sufficient thrust restraint at the point where it entered the house, it broke on December 31, 1979. As a consequence, a foundation wall collapsed and the basement flooded, resulting in damages of $353,753.84.

Witherspoon commenced this suit on December 9, 1980. He bases his action against McWane on strict liability in tort, and against Sides, How, and Alvine on negligence.

## Manufacturer's Motion

The operative allegation against the manufacturer McWane is that it "is strictly liable in tort for manufacturing and placing into the stream of commerce a defective product," in that the pipe was of inadequate quality.

The applicable period of repose is contained in Neb. Rev. Stat. § 25-224 (Cum. Supp. 1984), which in relevant part reads:

> [A]ny product liability action, except one governed by section 2-725, Uniform Commercial Code or by subsection (5) of this section, shall be commenced within ten years after the date when the product which allegedly

caused the personal injury, death, or damage was first sold or leased for use or consumption.

The statute does not define the meaning of the phrase "first sold . . . for use or consumption," nor does it have an independent, clear meaning of its own. Does the phrase mean when the product is first placed into the stream of commerce by the manufacturer or when possession of the product is relinquished for ultimate use or consumption?

Neb. U.C.C. § 2-106(1) (Reissue 1980) defines sale as the "passing of title from the seller to the buyer for a price (Section 2-401)." Under Neb. U.C.C. § 2-401(2) (Reissue 1980), title, unless the parties agree otherwise, "passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery . . . ." One difficulty with attempting to apply § 2-401 to product liability cases is that it is not clear who is the seller and who is the buyer. On the state of the record in this case, either Sides, Martig, or Witherspoon could be considered to be the buyer, just as either McWane, Sides, or Martig could be considered to be the seller. The Uniform Commercial Code definition of sale, then, does not help us define "sold" in this context.

When statutory language is ambiguous and must be construed, recourse should be had to the legislative history for the purpose of discovering the intent of the lawmakers. *Worley v. City of Omaha*, 217 Neb. 77, 348 N.W.2d 123 (1984).

During a legislative committee hearing, Senator DeCamp, a sponsor of the bill, in response to a concern as to when the period would begin to run on a piece of equipment manufactured by one but installed by another, stated, "The date for use or construction." Banking, Commerce and Insurance Committee Hearing, L.B. 665, 85th Leg., 2d Sess. 71 (Jan. 23, 1978). Senator Bereuter said the following:

I think when a bulldozer is sold to Lincoln Equipment the statute of repose does not begin unless they would be using it as a part of their own operation, not as a wholesaler, or not as a retailer. However, when that bulldozer is sold to an ultimate consumer, that is a contractor who uses the bulldozer repeatedly for his own business, then the statute of repose begins. The fact that that contractor may sell the

bulldozer to another contractor doesn't mean that the eight year period starts over, because it has been in the hands of an ultimate consumer, a contractor who uses a bulldozer to construct dams. The fact that he may sell it does not start it over. The eight year period runs from the time that it is sold to the first contractor, right up until the eight year period [later amended to 10 years], no matter whether or not it has changed ownership. When you're dealing with a product that goes to a wholesaler and consumer...excuse me, wholesaler or retailer the statute of repose has not begun. It does not begin until the ultimate consumer takes hold of it, and at that time the minutes begin ticking off on that eight year period. That is my understanding.

Floor Debate, L.B. 665, 85th Leg., 2d Sess. 6861 (Feb. 27, 1978). See, also, Floor Debate, *supra* at 6853-59, for expressions of similar understandings of the phrase.

*Winters v. Sears, Roebuck and Co.*, 554 S.W.2d 565 (Mo. App. 1977), held that "sold," as used in Restatement (Second) of Torts § 402 A(1)(b) (1965), which deals with the liability of a seller of a defective product, "does not have the technical meaning but indicates the time at which defendant relinquished control or possession of the product." 554 S.W.2d at 572. *Shoppers World v. Villarreal*, 518 S.W.2d 913 (Tex. Civ. App. 1975), interpreted "sold," for the purposes of Restatement § 402 A, *supra*, to mean when a shopper in a self-service store picks up an item from the seller's shelf.

Webster's Third New International Dictionary, Unabridged 2523 (1968), defines "use" as "the act or practice of using something" and "the fact or state of being used (a lamp in daily [use] for over 50 years)." It defines "consumption" as "the act or action of consuming or destroying (the [consumption] of organic matter by fire)." *Id.* at 490. Black's Law Dictionary 1381 (5th ed. 1979) defines "use" as "[t]o make use of, to convert to one's service." It defines "consumption" as the "[a]ct or process of consuming; . . . destruction." *Id.* at 287.

*South Texas Irr. Systems, Inc. v. Lockwood Corp.*, 489 F. Supp. 256 (W.D. Tex. 1980), decided that tangible chattels purchased for resale are not purchased "for use." Other cases

have defined "use" as something done customarily or habitually, a practice of doing a certain act. *Revzan v. Nudelman*, 370 Ill. 180, 18 N.E.2d 219 (1938); *Bradley Supply Co. v. Ames*, 359 Ill. 162, 194 N.E. 272 (1934); *Estate of Shaff v. Stein*, 171 Misc. 376, 14 N.Y.S.2d 117 (1939). Courts have defined the word "consumption" as meaning to destroy the substance of, to use up, expend, or waste. *Material Service Corp. v. McKibbin*, 380 Ill. 226, 43 N.E.2d 939 (1942); *Berry-Kofron Dental Lab. Co. v. Smith*, 345 Mo. 922, 137 S.W.2d 452 (1940); *Revzan v. Nudelman, supra*.

The foregoing legislative history and analysis convince us that the pipe was first sold for use when its possession was first surrendered to Witherspoon, that is, when he took possession of the house of which the pipe was a part. Although the record does not tell us when that event occurred, it must be inferred, in the absence of proof to the contrary, to have taken place not earlier than when construction of the house was completed. Therefore, the pipe was not relinquished to Witherspoon's possession until late December of 1970.

Having been filed within the 10-year period thereafter, the suit is not barred by the statute of repose embodied in § 25-224.

## General Contractor's Motion

Witherspoon alleges the general contractor, Sides, was engaged by him to construct the house described in the plans and specifications and to erect it "in a good and workmanlike manner." He further alleges Sides was negligent in permitting the installation of a cast iron rather than a ductile iron pipe, in not noting the discrepancy between the pipe installed and that specified, in not calling the discrepancy to the attention of the architect and engineer, and in all the respects in which the plumbing subcontractor was negligent. Witherspoon alleges the plumbing subcontractor was negligent by installing the wrong pipe, by improperly backfilling, and by failing to install adequate stress protection for the pipe.

Although cast as a tort, the true nature of the action against Sides is for breach of contract. See, *Bussell v. Western Diesel Power*, 216 Neb. 822, 346 N.W.2d 394 (1984); *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984).

However, we dispose of the case on the theory on which it was presented to the district court. *Lincoln Grain v. Coopers & Lybrand, supra.*

Whether pled in tort or contract, the applicable period of repose is found in Neb. Rev. Stat. § 25-223 (Reissue 1979). See *Kearney Clinic Bldg. Corp. v. Weaver*, 211 Neb. 499, 319 N.W.2d 95 (1982), applying the statute in the context of a contract action. The statute provides in relevant part:

> In no event may any action be commenced to recover damages for an alleged breach of warranty on improvements to real property or deficiency in the design, planning, supervision, or observation of construction, or construction of an improvement to real property more than ten years beyond the time of the act giving rise to the cause of action.

A statute of repose is a type of a statute of limitations. *Stock v. Meissner*, 217 Neb. 56, 348 N.W.2d 426 (1984). It is clear beyond any doubt that a period of limitations begins to run in this state upon the violation of a legal right, that is, when the aggrieved party has the right to institute and maintain suit, even though the nature and extent of the damages may not be known. *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984); *Interholzinger v. Estate of Dent*, 214 Neb. 264, 333 N.W.2d 895 (1983); *Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 279 N.W.2d 603 (1979).

The operative phrase in § 25-223 is "the act giving rise to the cause of action." Sides argues that each act of negligence attributed to it, either directly or vicariously, occurred more than 10 years prior to the filing of suit. That argument overlooks, however, the allegation that Sides was engaged to erect the house in a good and workmanlike manner. Implicit in Witherspoon's cause of action against Sides is the claim that Sides erected the house in other than a workmanlike manner by allowing the use of an inadequately supported cast iron pipe. The failure to erect the structure in a workmanlike manner was the "act giving rise to the cause of action," and it occurred when construction of the house was completed. See *Cacace v. Morcaldi*, 37 Conn. Supp. 735, 435 A.2d 1035 (1981), holding completion of construction to be the operative date under a

statute barring suit after 3 years from "act or omission complained of." See, also, *Oja & Associates v. Park Towers*, 89 Wash. 2d 72, 569 P.2d 1141 (1977); *Shockley v. Public Service Company of Colorado*, 525 P.2d 1183 (Colo. App. 1974).

Since the suit was filed within 10 years from the completion of construction, it is not barred by the period of repose contained in § 25-223.

## Architect's Motion

Witherspoon alleges he engaged the architect, How, to design the house and to "inspect the construction thereof as it progressed." He further alleges How was negligent in failing to specify ductile pipe, in accepting the engineer's description of cast iron pipe, in failing to inspect the pipe installation, and in accepting the use of a cast iron pipe; and having accepted a cast iron pipe, in failing to cause the design of adequate stress protection; and in designing an inadequate water system.

The foregoing discussion as to the nature of the action against the general contractor applies as well to the true nature of the action against the architect.

Again, however, whether pled in tort or contract, there can be no question that the period of professional repose contained in Neb. Rev. Stat. § 25-222 (Reissue 1979) applies. A professional act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. *Marx v. Hartford Acc. & Ind. Co.*, 183 Neb. 12, 157 N.W.2d 870 (1968). Accordingly, in addition to the traditional professions of law, *Rosnick v. Marks, supra*, and medicine, *Smith v. Dewey*, 214 Neb. 605, 335 N.W.2d 530 (1983), we have applied professional periods of limitations to an accountant, *Lincoln Grain v. Coopers & Lybrand*, 215 Neb. 289, 338 N.W.2d 594 (1983); a medical technician, *Swassing v. Baum*, 195 Neb. 651, 240 N.W.2d 24 (1976); and to one giving investment advice, *Educational Service Unit No. 3 v. Mammel, O., S., H. & S., Inc.*, 192 Neb. 431, 222 N.W.2d 125 (1974). The relevant period of repose is stated in § 25-222 as follows:

[I]n no event may any action be commenced to recover

> damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action.

Witherspoon argues that the continuing nature of his relationship with How means the period of repose did not begin to run until construction of the house was completed. On the other hand, How argues our prior cases hold that the period of repose began to run when he allegedly performed, or failed to perform, the specific acts about which complaint is made. How cites us to *Lincoln Grain v. Coopers & Lybrand, supra*, which discusses the continuing relationship concept but finds none existed, and applied the 2-year period of limitation to an act of alleged accountant malpractice; *Smith v. Dewey, supra*, which holds that in medical malpractice the period of repose begins to run when the treatment about which complaint is made ceases, irrespective of whether the physician-patient relationship continues; and *Williams v. Elias*, 140 Neb. 656, 1 N.W.2d 121 (1941), which applies the same rule. Although not cited, *Colton v. Dewey*, 212 Neb. 126, 321 N.W.2d 913 (1982), another medical malpractice case, rests on the same rationale. Additionally, in *Interholzinger v. Estate of Dent*, 214 Neb. 264, 333 N.W.2d 895 (1983), we ruled the cause of action against an attorney who allegedly negligently subjected private lands to corporate debts accrued when the alleged negligent act took place, notwithstanding the fact that the attorney continued to represent the clients.

As we noted in *Interholzinger*, the point at which a period of limitations begins to run must be determined from the facts of each case. The feature which distinguishes How's situation from the basis of the holdings in the legal and medical malpractice cases discussed above is that, here, all the acts or omissions about which complaint is made are related to How's alleged duty to "inspect the construction [of the house] as it progressed." Under these circumstances the failure "which provides the basis for the cause of action" ended when construction of the house was completed. The action is therefore not barred by the professional period of repose. See

*Cacace v. Morcaldi*, 37 Conn. Supp. 735, 435 A.2d 1035 (1981).

## Engineer's Motion

Alvine was selected by How to "provide engineering design services." Witherspoon alleges Alvine was negligent in specifying cast iron rather than ductile iron pipe and in failing, in view of the use of a cast iron pipe, to design adequate stress protection.

The same rationale which leads to the conclusion that the professional period of repose does not bar the action against the architect, How, requires a conclusion that the action against the engineer, Alvine, is barred. There is no claim that the alleged acts and omissions of Alvine occurred beyond whatever date it delivered its "engineering design services" to How. Although the record does not tell us what that date was, it must be inferred to have been no later than when the pipe was installed in September of 1969, more than 10 years prior to the filing of suit.

We recognize that in so holding, the result may at times be that one whose design is alleged to have caused or contributed to the failure of a structure becomes, by the passage of time, insulated from liability, while others involved in the construction process may remain subject to liability. Such, however, is the nature of periods of repose.

## Decision

The trial court correctly dismissed Witherspoon's action against the engineer, Alvine, but erred in dismissing the action as against the manufacturer, McWane, the general contractor, Sides, and the architect, How. We therefore affirm the judgment of dismissal as to Alvine but reverse the judgments of dismissal as to McWane, Sides, and How and remand the cause for further proceedings as to the latter three movants for summary judgment.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

BOSLAUGH, J., dissenting in part.

So far as the defendant McWane Cast Iron Pipe Co., Inc., is concerned, it seems to me that the pipe had been devoted to its

ultimate use or consumption when it was placed in the ground, connected to the main, and used to convey water to the premises commencing on or before October 1, 1969.