767 F.2d 457
 The CITY OF OMAHA, a municipal corporation; Board of the
Omaha Public Library, a Public Body, and City of
Omaha Library Facilities Corporation, a
Non-Profit Corporation, Appellants,
v.
HELLMUTH, OBATA AND KASSABAUM, INC., Appellee.
 No. 85-1046.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1985.
Decided July 10, 1985.
 
 Thomas Mumgaard, Omaha, Neb., for appellants.
 Jerry W. Katskee, Omaha, Neb., for appellee.
 Before McMILLIAN and ARNOLD, Circuit Judges, and SACHS,* District Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 The City of Omaha, Board of the Omaha Public Library and City of Omaha Library Facilities Corp. (hereinafter jointly referred to as the City) appeal from a final judgment entered in the District Court[1] for the District of Nebraska granting summary judgment in favor of Hellmuth, Obata and Kassabaum, Inc. (HOK). The City brought an action against HOK alleging negligence, breach of contract and breach of implied warranty in the design of the perimeter retaining wall at the W. Dale Clark Library in Omaha, Nebraska. For reversal the City argues that the district court erred in (1) applying the wrong statute of limitations to the claims of the City and (2) granting summary judgment when material factual issues existed. For the reasons discussed below, we affirm.
 
 
 2
 In 1972 the City entered into a contract with HOK and Latenser & Sons, Inc., a joint venture, to provide architectural services for the construction of a new public library facility in downtown Omaha, Nebraska. The architectural design provided by HOK called for the east entrance to the library to be situated on street level; from that level the terrain slopes so that the library is surrounded on three sides by an open air parking area which is approximately one story below the building's east side. A sloped retaining wall extends completely around the site perimeter and a portion of the fourth side. HOK's initial design of the building and retaining wall required the wall to be composed of reinforced concrete. Thereafter the composition of the wall was changed at the City's request to loose rubble stone. Backfill was placed behind the wall and precast handrails were placed on top of the fill.
 
 
 3
 The library and perimeter retaining wall were completed in December 1976. On October 25, 1976, Frank Latenser, an architect with Latenser & Sons, Inc., sent a letter to Frank Gibson, director of the library, advising that he had conducted an inspection of the stone retaining wall. Latenser proposed that a photographic record of the wall alignment be made so that future movement could be detected. Latenser predicted that detectable movement in the wall and sidewalk was quite possible, even probable, but indicated that the wall and railing were designed to accommodate the expected movement. He advised that movement would occur during the winter from frost or at a future date due to consolidation of the rubble wall. Latenser suggested that expected "settlement due to loss of earth from the bed joints could be lessened by establishing rock plants between the rocks."
 
 
 4
 On January 3, 1977, Latenser again sent a report to the City concerning the alignment of the wall, sidewalks and railings. The purpose of the report was to provide added details so that any subsequent movement could be more readily ascertained. He indicated that misalignment was inevitable but that this could be corrected through simple procedures.
 
 
 5
 True to Latenser's prediction, movement and bulging of the wall began to appear. The City and HOK dispute when these conditions were known to the City. Various library staff, however, observed falling rocks from the rubble wall, a deviation in the wall alignment, and mud washing out from between the stones. In February 1977 Latenser wrote to the Omaha Public Works Department regarding "extensive surface deterioration of the sidewalks" and stated that "the related problem is certain frost-heaving and caulking failure which have also occurred." Latenser blamed the problem on "excessive street salt being splashed onto the walks" and recommended that the use of salt cease on adjacent streets and that the walk damage be studied. In 1981 Latenser visited the site and told library personnel that increased maintenance and minor corrections were needed. The library personnel budgeted $15,000 for the repairs in the 1982 budget.
 
 
 6
 Beginning in the spring of 1982, the wall rapidly deteriorated. Rocks increasingly fell from the wall, the sidewalk sank, and the weight of the rocks began to burst light fixtures set into the wall. The City hired a structural engineer to conduct an independent review of the wall. The engineer indicated in his June 1982 report that the changes in the wall indicated a possible flaw in the wall design.
 
 
 7
 The City filed this complaint on October 15, 1982, four months after receiving the engineer's report and eight years after the wall was constructed. HOK alleged as one of its defenses the statute of limitations. HOK also filed a motion for summary judgment, which motion was referred to a United States Magistrate. The magistrate recommended that the motion for summary judgment be denied, and the district court subsequently filed an order adopting the findings and recommendations of the magistrate. HOK then filed a motion for reconsideration. The district court, following a hearing on the motion, granted summary judgment on the grounds that the actions were barred by Nebraska statutes of limitation. This appeal concerning the negligence and breach of warranty claim followed.
 
 
 8
 The City argues that the district court erred in holding that its claims were time-barred by Neb.Rev.Stat. Sec. 25-222 (1943) (Reissue 1979) because the appropriate statute of limitations was Neb.Rev.Stat. Sec. 25-223 (1943) (Reissue 1979). The City argues that Sec. 25-223 specifically applies to the type of claim which the City is making, that is, a deficiency in the design and planning of improvements to real property.
 
 
 9
 The Nebraska Supreme Court in a very recent case has held that
 
 
 10
 whether pled in tort or contract, there can be no question that the period of professional repose contained in Neb.Rev.Stat. Sec. 25-222 ... applies [to actions against architects]. A professional act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor skill is predominantly mental or intellectual, rather than physical or manual.
 
 
 11
 D.J. Witherspoon v. Sides Construction Co., 219 Neb. 117, 362 N.W.2d 35, 42 (1985) (citations omitted); see Horn v. Burns & Roe, 536 F.2d 251, 255-56 (8th Cir.1979). In Witherspoon, the plaintiff's home was damaged when the pipe supplying water to his home broke. He then sued the trustee in bankruptcy, the manufacturer of the pipe, the general contractor, the plumbing contractor, and the architect. The plaintiff alleged that the architect had been negligent in failing to specify ductile pipe, in accepting the engineer's description of cast iron pipe, in accepting the use of a cast iron pipe, in failing to develop a design of adequate stress protection, and in designing an inadequate water system. The Nebraska Supreme Court applied Sec. 25-222 to the claim against the architect but applied Sec. 25-223 to the claim against the general contractor. We therefore hold that the district court correctly applied Sec. 25-222 to the City's claims against HOK.
 
 
 12
 The City next argues that the district court erred in granting summary judgment because material issues of fact existed as to when the City knew of the problems with the wall. The City argues that it did not have knowledge until the spring of 1982. The City concedes that it was aware of problems of misalignment, falling rocks, erosion, and sinking before 1982 but argues that Latenser continually assured the City that the problems were expected, minor, and the result of factors other than faulty design. The City argues that HOK through concealment and fraud prevented it from discovering the damages.
 
 Section 25-222 provides:
 
 13
 Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services provided the basis for such action; provided, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier....
 
 
 14
 The City in its complaint states: "[I]n the spring of 1981 the respective plaintiffs became aware that the rock retaining wall was beginning to crack and deteriorate, that said deterioration is now overtly apparent and creates an extraordinarily hazardous condition; that the rock retaining wall is now wholly unfit for its intended use." (Emphasis added.) The district court found that Latenser advised the director of the library in February 1977 of "extensive surface deterioration of the sidewalks above the retaining wall ... the damage in a single winter is substantial ... approaching a need for replacement in some areas." In February 1981 Latenser again informed Gibson through Edward Newman, assistant director of the library, that repairs of the wall were required. The City shortly after February 1981 allocated $15,000 for repair of the wall. Newman also testified that he noticed dirt washing out from between the wall joints in 1977 and misalignment in 1980. Donald Baier, maintenance foreperson at the library, testified that he noticed misalignment in 1979 and "extreme" or "real extreme" deterioration in the spring of 1981. Baier testified that he notified Gibson and Newman of the problem.
 
 
 15
 We hold that the district court did not err in granting summary judgment to HOK because no material issue of fact existed as to when the City discovered the damage to the wall. The City's complaint and the testimony of its employees fix the time of discovery as the spring of 1981 or earlier. The complaint filed in October 1982 is therefore beyond the one-year discovery period of Sec. 25-222. Consequently, we affirm the judgment of the district court.
 
 
 
 *
 The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, sitting by designation
 
 
 [1]
 This case was decided by the late Honorable Albert G. Schatz, United States District Judge for the District of Nebraska. Judge Schatz died on April 30, 1985