SHARON L. FARBER, PERSONAL REPRESENTATIVE OF THE ESTATE
OF JERRY L. FARBER, DECEASED, AND SHARON L. FARBER,
INDIVIDUALLY, APPELLANT, V. LOK-N-LOGS, INC.,
A NEW YORK CORPORATION, ET AL., APPELLEES.

701 N.W.2d 368

Filed August 5, 2005. No. S-04-523.

Howard N. Epstein and Steven J. Riekes, of Marks, Clare & Richards, L.L.C., for appellant.

Michael S. Degan, of Blackwell, Sanders, Peper & Martin, L.L.P., and Robert L. Shuftan, Anthony G. Hopp, and Richard J. Jancasz, of Wildman, Harrold, Allen & Dixon, L.L.P., for appellee Wood Treating Chemicals Company.

Robert Keith, of Engles, Ketcham, Olsen & Keith, P.C., for appellees Lok-N-Logs, Inc., and Webb & Sons, Inc.

Kurth A. Brashear, of Brashear & Ginn, and Bruce A. Moothart and Leonard L. Wagner, of Husch & Eppenberger, L.L.C., for appellee Monsanto Company.

Jill Robb Ackerman, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, L.L.P., and David Bartel and Nora M. Platt, of Quarles & Brady, for appellee Vulcan Materials Company.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Plaintiff-appellant Sharon L. Farber (appellant), individually and as the personal representative of the estate of Jerry L. Farber (Farber), brought this product liability action against defendants-appellees Lok-N-Logs, Inc.; Monsanto Company; Vulcan Materials Company; Wood Treating Chemicals Company; Webb

& Sons, Inc.; and John Doe—"Real Name Unknown" (collectively appellees). Dow Chemical Company, Blair Lumber Company, and Christensen Lumber Company originally were also named as defendants, but were dismissed from the case. Appellees filed motions for summary judgment. The district court for Washington County sustained the motions on the basis that appellant's action was barred by the 10-year statute of repose contained in Neb. Rev. Stat. § 25-224(2) (Cum. Supp. 2004). The district court dismissed the case with prejudice. Appellant filed an appeal from the district court's order dismissing the case. We conclude that the district court correctly concluded that the action was barred by the statute of repose in § 25-224(2), and accordingly, we affirm.

## STATEMENT OF FACTS

Beginning in 1978 and continuing essentially until his death on March 17, 2003, Farber was employed by the Nebraska Game and Parks Commission at Fort Atkinson State Historical Park in Washington County, Nebraska. In June 1978, Farber began work constructing replica barracks at the park. The barracks were made of logs treated with "Pentachlorophenol" (penta), a wood preservative. Farber also applied a liquid form of penta to treat previously untreated wood used in the construction of the barracks. Farber worked on the construction of additional barracks in 1979. These barracks were also built using penta-treated logs and wood. The logs used in the construction of the barracks were allegedly supplied by appellee Lok-N-Logs, Inc., a New York corporation, and the logs were allegedly treated with penta by appellee Webb & Sons, Inc., also a New York corporation. The penta was allegedly manufactured by appellees Wood Treating Chemicals Company, Monsanto Company, and Vulcan Materials Company.

Farber's testimony was preserved in depositions. Farber testified that in the late summer or early fall of 1979, he was instructed to stop using liquid penta, allegedly because the federal government had determined that penta was a carcinogen. Thereafter, when the park constructed additional barracks, different wood preservatives were used on the logs and other materials. Farber testified, however, that he regularly worked in and around the barracks constructed of penta-treated logs and wood

and that his responsibilities included opening and airing out the barracks for the season after they had been closed, as well as various construction projects that required him to work on the penta-treated materials.

Regarding his medical condition, the record reflects that Farber smoked and that during his lifetime, he had had numerous surgeries, including six angioplasties, four stents, double bypass surgery, left knee replacement surgery, and gallbladder surgery. In December 2001, Farber underwent a series of medical tests to determine the cause of certain medical problems he was experiencing. In January 2002, Farber was diagnosed with myelodysplastic syndrome, a blood disorder. Farber testified that he was also informed by his doctors that he had suffered some sort of chromosome damage. In spring 2002, Farber was diagnosed with acute myelogenous leukemia. On December 27, 2002, Farber and appellant filed the original petition. Farber died on March 17, 2003.

Appellees each moved for summary judgment. The motions came on for hearing on February 24, 2004. Numerous exhibits, including two separate depositions of Farber, were offered and admitted into evidence. On March 31, the district court sustained appellees' motions and dismissed the case with prejudice, determining that the applicable statute of repose in § 25-224(2) had extinguished the action and that appellant was therefore barred from bringing her claims against appellees. Appellant filed an appeal from the district court's order sustaining appellees' motions for summary judgment.

## ASSIGNMENT OF ERROR

Appellant assigns one error. Appellant claims that the district court erred in determining that appellant's lawsuit was barred by § 25-224(2).

## STANDARDS OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Blair v. State Farm Ins. Co.*, 269 Neb. 874, 697 N.W.2d 266 (2005).

■ Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

## ANALYSIS

In its memorandum and order filed March 31, 2004, the district court granted summary judgment in favor of all appellees and dismissed appellant's petition. As established by the record and noted by the district court, the liquid penta and penta-treated logs were first delivered to Fort Atkinson State Historical Park in 1978 and in any event "no later than 1979," whereupon Farber was exposed to the penta. The district court correctly noted that these determinative facts were not in dispute. The district court further noted that appellant's case was a product liability action, see Neb. Rev. Stat. § 25-21,180 (Cum. Supp. 2004), and, relying on *Givens v. Anchor Packing*, 237 Neb. 565, 466 N.W.2d 771 (1991), concluded that the action was barred "no later than 1989" by the 10-year statute of repose found in § 25-224(2).

On appeal, appellant contends that the district court erred in concluding that appellant's case was barred by the statute of repose found in § 25-224(2). In urging this court to reverse the district court's grant of summary judgment in favor of appellees, appellant makes several claims including the argument that *Givens* should be overruled or, in the alternative, that this court should make a judicial exception to the statute of repose for latent medical conditions, which exception would afford relief from the bar otherwise imposed by § 25-224(2). Upon due consideration, we reject appellant's arguments and conclude that the district court did not err in concluding that appellant's action was barred by the statute of repose and in granting summary judgment in favor of appellees.

A review of the statutory limitations periods applicable to products liability actions is critical to our resolution of this case. Section 25-224(1), effective July 22, 1978, preserved the 4-year statute of limitations previously found at Neb. Rev. Stat. § 25-207 (Reissue 1995) and, in addition, enacted a 10-year statute of repose. Section 25-224(1) and (2) (Cum. Supp. 1978) thus provided as follows:

(1) All product liability actions shall be commenced within four years next after the date on which the death, injury, or damage complained of occurs.

(2) Notwithstanding subsection (1) of this section or any other statutory provision to the contrary, any product liability action, except one governed by section 2-725, Uniform Commercial Code, shall be commenced within ten years after the date when the product which allegedly caused the personal injury, death, or damage was first sold or leased for use or consumption.

A 2-year sunset provision, not relevant here, was contained in § 25-224(4).

By virtue of 1981 Neb. Laws, L.B. 29, effective August 30, 1981, § 25-224 was amended by adding § 25-224(5), thus affording asbestos-related claims the protection of a discovery rule and relieving such claims from the strictures of the statute of repose. Section 25-224(5) provides:

Any action to recover damages based on injury allegedly resulting from exposure to asbestos composed of chrysotile, amosite, crocidolite, tremolite, anthrophyllite, actinolite, or any combination thereof, shall be commenced within four years after the injured person has been informed of discovery of the injury by competent medical authority and that such injury was caused by exposure to asbestos as described herein, or within four years after the discovery of facts which would reasonably lead to such discovery, whichever is earlier. No action commenced under this subsection based on the doctrine of strict liability in tort shall be commenced or maintained against any seller of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user, or consumer unless such seller is also the manufacturer of such product or the manufacturer of the part thereof claimed to be defective. Nothing in this subsection shall be construed to permit an action to be brought based on an injury described in this subsection discovered more than two years prior to August 30, 1981.

By virtue of 2001 Neb. Laws, L.B. 489, operative September 1, 2001, § 25-224(2) was amended to provide a distinction between products manufactured inside Nebraska and products

manufactured outside Nebraska with respect to the application of the statute of repose. Section 25-224(2) provides in part:

(a) Notwithstanding subsection (1) of this section or any other statutory provision to the contrary, any product liability action, except one governed by section 2-725, Uniform Commercial Code or by subsection (5) of this section, shall be commenced as follows:

(i) For products manufactured in Nebraska, within ten years after the date the product which allegedly caused the personal injury, death, or damage was first sold or leased for use or consumption; or

(ii) For products manufactured outside Nebraska, within the time allowed by the applicable statute of repose, if any, of the state or country where the product was manufactured, but in no event less than ten years. If the state or country where the product was manufactured does not have an applicable statute of repose, then the only limitation upon the commencement of an action for product liability shall be as set forth in subsection (1) of this section.

In ruling on the summary judgment motions, the district court focused on the language "first sold or leased for use or consumption" consistently found in the product liability statute of repose in § 25-224(2), and concluded that

[b]ecause there is no dispute of fact that the liquid penta and penta treated logs were first delivered to the Fort Atkinson job site in 1978, and no later than 1979, the period of repose set forth in § 25-224 extinguished Plaintiff's claim no later than 1989. Because . . . Farber did not commence his cause of action within that period, the Court finds that any cause of action against the Defendants was forever barred in 1989 by operation of the statute of repose. This action, which was not commenced until 2001, must therefore be dismissed as a matter of law. *See Givens v. Anchor Packing Co.,* 237 Neb. 565 (1991).

In applying the law to the facts, the district court correctly noted that the dates of delivery of the penta and penta-treated logs were critical to the commencement of the statute of repose. We previously examined § 25-224(2)'s triggering language, "first sold or leased for use or consumption," in *Witherspoon v. Sides*

*Constr. Co.*, 219 Neb. 117, 362 N.W.2d 35 (1985), a case involving the composition of a pipe used in the construction of a home. In *Witherspoon*, we stated that the pipe was "first sold for use" as understood under § 25-224(2), when the pipe was first surrendered or relinquished to the homeowner, not when it was placed into the stream of commerce. 219 Neb. at 123, 362 N.W.2d at 41. See, also, *Radke v. H.C. Davis Sons' Mfg. Co.*, 241 Neb. 21, 486 N.W.2d 204 (1992). Given the delivery dates in the instant case, the district court did not err in concluding that the statute of repose ran from "1978, and no later than 1979," thus barring the action no later than 1989.

In an effort to avoid the bar imposed by the statute of repose, appellant asserted in district court that appellees should be estopped from relying on the statute of repose because appellees allegedly fraudulently concealed the dangers of penta. Given the record made before it, the district court correctly rejected this argument. In the March 31, 2004, order, the district court reviewed the record and noted that there was no evidence of fraudulent concealment or conduct by appellees which would otherwise estop application of the statute of repose and that, in fact, the record showed "Farber was not diagnosed until after the statute of repose had extinguished any claim against the Defendants." See *Groth v. Sandoz, Inc.*, 601 F. Supp. 453 (D. Neb. 1984) (stating that when plaintiff was not diagnosed until after statute of repose had extinguished her claim, any alleged concealment did not deprive plaintiff of opportunity to preserve or pursue her claim). See, also, *Peterson v. Fuller Co.*, 807 F.2d 151 (8th Cir. 1986) (stating that when injury occurs after expiration of 10-year statute of repose, plaintiff could not have been fraudulently induced to postpone timely filing of lawsuit). Having reviewed the record and taking all inferences in favor of appellant as the nonmoving party, see *Johnson v. United States Fidelity & Guar. Co.*, 269 Neb. 731, 696 N.W.2d 431 (2005), we determine that the district court did not err when it determined that no facts precluded or otherwise estopped application of § 25-224(2) and that the statute of repose in § 25-224(2) barred appellant's action.

Despite the undisputed material facts and existing law, appellant argues that the order of the district court granting summary judgment in favor of appellees should be reversed because the

outcome is " 'manifestly unjust.' " Brief for appellant at 37. In this regard, appellant seeks to invoke the terms of § 25-224(2)(a)(i) and (ii) which became operative September 1, 2001. Thus, notwithstanding the 10-year provision of § 25-224(2) as it existed in statutes from 1978 to 2001, and notwithstanding our case law on the subject, all of which extinguished appellant's claims no later than 1989, appellant contends that because the penta-treated logs were manufactured in New York, which does not have an applicable statute of repose, appellant should be able to take advantage of the new in-state/out-state distinction found in § 25-224(2)(a)(i) and (ii), thereby resurrecting appellant's extinguished action. In support of this argument, appellant takes issue with the rationale of *Givens v. Anchor Packing*, 237 Neb. 565, 466 N.W.2d 771 (1991), which held that the 1981 amendment to § 25-224 could not resurrect an asbestos-related action which had already been extinguished by the statute of repose. Appellant suggests we overrule *Givens*. In the alternative, appellant suggests we make a judicial exception to the application of § 25-224(2) for latent medical conditions such as Farber's. We are thus asked by appellant to graft a discovery rule for latent medical conditions onto the statute of repose found in § 25-224(2). We reject appellant's suggestion. As explained more fully below, we determine that the rationale of *Givens* is sound and that it is for the Legislature, not this court, to create exceptions to the statute of repose.

In *Givens, supra*, by certified question from the U.S. District Court for the District of Nebraska, see Neb. Rev. Stat. § 24-219 (Reissue 1995), we were asked whether the 1981 asbestos-related amendment, § 25-224(5), could be applied retroactively. That is, we were asked whether § 25-224(5) could revive a claim which had been barred by application of the statute of repose in the earlier version of § 25-224. We concluded that the amendment could not resurrect an action which the prior version of the statute had already extinguished. We explained that the rationale behind this conclusion was grounded upon the concept of due process, which prevents persons from being deprived of their property without due process of law. In *Givens*, we noted the distinction between a statute of limitations and a statute of repose, and we further stated that the immunity afforded by a statute of repose was a substantive right protected by Nebraska law and the

due process clause in the Nebraska Constitution, Neb. Const. art. I, § 3.

Recently, in *Budler v. General Motors Corp.*, 268 Neb. 998, 689 N.W.2d 847 (2004), we again had the opportunity to comment on § 25-224(2). In *Budler*, in answer to a certified question, we concluded that the 10-year statute of repose in § 25-224(2) was not tolled by a person's status as a minor pursuant to Neb. Rev. Stat. § 25-213 (Reissue 1995). In *Budler*, we noted the distinction between a statute of limitations and a statute of repose and referred to *Stuart v. American Cyanamid Co.*, 158 F.3d 622 (2d Cir. 1998), *cert. denied* 526 U.S. 1065, 119 S. Ct. 1456, 143 L. Ed. 2d 543 (1999). In this regard, in *Budler*, we noted that the U.S. Court of Appeals for the Second Circuit had stated that

> a statute of limitations generally establishes the time period within which lawsuits may be commenced after a cause of action has accrued and that, as such, it is "an affirmative defense, affecting the remedy, but not the existence of the underlying right. [Citation omitted.] In contrast, a statute of repose extinguishes the cause of action, the right, after a fixed period of time, usually measured from the delivery of the product . . . regardless of when the cause of action accrued."

*Budler*, 268 Neb. at 1002, 689 N.W.2d at 850 (quoting *Stuart, supra*).

Elsewhere, it has been observed that

> [i]t is important to differentiate between a statute of limitations and a statute of repose. A statute of limitations usually specifies the time limit for commencing an action after the cause of action has accrued, but a statute of repose is an absolute limitation which prevents a cause of action from arising after a certain period which begins to run upon occurrence of a specified event. A statute of repose thus eliminates a cause of action at a specified time, regardless of whether an injury has occurred or a cause of action accrued as of that date. *See* 54 C.J.S. *Limitations of Actions* § 4 (1987).

Elliott C. Winograd, *Products Liability: A Critical Analysis of the Statute of Repose*, 63 N.Y. St. B.J. 14 n.5 (Nov. 1991). In this regard, it has been observed that a statute of repose prevents what

might otherwise be a cause of action from arising after a particular period. See *Van Slyke v. Worthington*, 265 N.J. Super. 603, 628 A.2d 386 (1992). See, similarly, *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 199, 293 A.2d 662, 667 (1972) (stating that statute of repose extinguishes cause of action at ascertainable time and "prevent[s] what might otherwise be a cause of action . . . from ever arising").

In Nebraska, we have recognized that upon the passage of the 10-year repose period in § 25-224(2), the defendant acquires a substantive right protected by statute. *Spilker v. City of Lincoln*, 238 Neb. 188, 469 N.W.2d 546 (1991). In Nebraska, we have also recognized that the effect of the 10-year statute of repose in § 25-224(2) can be to prevent what might otherwise be a cause of action from ever arising. In *Gillam v. Firestone Tire & Rubber Co.*, 241 Neb. 414, 416-17, 489 N.W.2d 289, 291 (1992), we stated:

> The 10-year statute of repose begins to run when the product is first relinquished for use or consumption. *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 362 N.W.2d 35 (1985). Where the injury occurs within the 10-year period, and a claimant commences his or her action after the 10 years have passed, an action accrues but is barred. *Miers v. Central Mine Equipment Co.*, 604 F. Supp. 502 (D. Neb. 1985). Where the injury occurs outside the 10-year period, no substantive cause of action ever accrues, and a claimant's actions are likewise barred. *Peterson v. Fuller Co.*, 807 F.2d 151 (8th Cir. 1986).

It has been observed that a statute of limitations is generally procedural in nature, whereas a statute of repose is generally substantive in nature. See 51 Am. Jur. 2d *Limitation of Actions* § 32 (2000). We have recently noted that statutes of limitations are generally considered procedural, *Harris v. Omaha Housing Auth.*, 269 Neb. 981, 698 N.W.2d 58 (2005), and in *Givens v. Anchor Packing*, 237 Neb. 565, 466 N.W.2d 771 (1991), and *Spilker, supra*, we recognized that the Legislature created a substantive right in products liability defendants by passage of § 25-224(2). In considering § 25-224(2), the U.S. Court of Appeals for the Eighth Circuit stated:

A statute of repose . . . directly impacts on the accrual of a cause of action in the first instance. It operates as a statutory bar independent of the actions (or inaction) of the litigants—often before those litigants can even be identified . . . [A statute of repose] creates in the potential products-liability defendant a right to immunity from suit under the circumstances set out in the statute. . . . The statute of repose "regulates rights," not remedies.

(Citations omitted.) *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 737 (8th Cir. 1995), *cert. denied* 516 U.S. 814, 116 S. Ct. 67, 133 L. Ed. 2d 28.

■ It has been observed that statutes of repose represent a legislative decision that

"as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability. Thus a 'statute of repose' is intended as a substantive definition of rights as distinguished from a procedural limitation on the remedy used to enforce rights."

*School Bd. of the City of Norfolk v. U.S. Gypsum*, 234 Va. 32, 37, 360 S.E.2d 325, 328 (1987) (quoting Robert I. Stevenson, *Products Liability and the Virginia Statute of Limitations—A Call for the Legislature Rescue Squad*, 16 U. Rich. L. Rev. 323 (1982)). See, also, *Albrecht v. General Motors Corp.*, 648 N.W.2d 87 (Iowa 2002) (stating that statute of repose reflects legislative conclusion that point in time arrives beyond which potential defendant should be immune from liability for past conduct). In *Budler v. General Motors Corp.*, 268 Neb. 998, 689 N.W.2d 847 (2004), we implicitly acknowledged that in enacting the statute of repose in § 25-224(2), the Legislature deliberately overrode the infancy tolling provision of § 25-213, and we continue to believe that the Legislature, as a matter of policy, has decided that with respect to the statute of repose and in the absence of legislative exception, a product liability defendant should not be subjected to liability 10 years after the product was first sold or leased for use or consumption. As a matter of law, we conclude that the plain language of § 25-224(2) bars the instant action. See *Rauscher v. City of Lincoln*, 269 Neb. 267, 691 N.W.2d 844 (2005).

Although phrased somewhat differently than the foregoing discussion, *Givens, supra,* correctly differentiated between a statute of limitations and a statute of repose and recognized that the statute of repose found in § 25-224(2) represented a substantive right which the Legislature by statute had chosen to confer on products liability defendants and that once vested by virtue of the passage of the 10-year period, it could not be removed by the Legislature or this court. In this regard, we recently reiterated: "It has long been the law of Nebraska . . . that the Legislature is free to create and abolish rights so long as no vested right is disturbed." *Gourley v. Nebraska Methodist Health Sys.,* 265 Neb. 918, 951, 663 N.W.2d 43, 74 (2003).

*Givens v. Anchor Packing,* 237 Neb. 565, 466 N.W.2d 771 (1991), held that an amendment to § 25-224 could not resurrect an action which the prior version of the statute of repose had already extinguished. *Givens* was decided in 1991, and its holding regarding retroactivity has not evoked a change by the Legislature. We therefore understand that the Legislature has acquiesced in this decision. *Semler v. Sears, Roebuck & Co.,* 268 Neb. 857, 689 N.W.2d 327 (2004). We believe that the rationale expressed in *Givens* is sound, and we, therefore, continue to adhere to its holding.

Appellant expresses dissatisfaction with the fact that application of the statute of repose in § 25-224(2) can and, in this case, does prevent what might otherwise be a cause of action from ever arising. To ameliorate this result, appellant urges us to graft a discovery rule onto § 25-224(2) for latent medical condition cases. We are aware that we have determined that the discovery rule is applicable to the statute of limitations found in § 25-224(1). *Condon v. A. H. Robins Co.,* 217 Neb. 60, 349 N.W.2d 622 (1984). However, unlike *Condon,* the subsection of § 25-224 at issue in this case is the statute of repose in § 25-224(2), and judicially amending the statute of repose to incorporate discovery would not be prudent. In this regard, it has been stated, and we agree, that "[u]nlike a statute of limitations, a statute of repose is not triggered by the discovery rule." *Carven v. Hickman,* 135 Md. App. 645, 652, 763 A.2d 1207, 1211 (2000). Thus,

> [t]he period of repose gives effect to a policy different from that advanced by a period of limitations; the purpose

of a statute of repose is to impose a cap on the applicability of the discovery rule so that the outer limit terminates the possibility of liability after a definite period of time, regardless of a potential plaintiff's lack of knowledge of his cause of action. *Serafin v. Seith*, 284 Ill. App. 3d 577, 588, 672 N.E.2d 302, 310, 219 Ill. Dec. 794, 802 (1996).

As explained above, § 25-224(2) as it existed from 1978 to 2001, was a substantive provision which the Legislature created and, after the passage of the 10-year period, conferred a substantive right on appellees in this case to not be subjected to liability after 1989 at the latest. We are aware that relief from certain of the consequences of the statute of repose in § 25-224(2) has been accorded by the Legislature by passage of certain amendments. See § 25-224(2)(a)(i) and (ii) and (5). Specifically, the Legislature demonstrated that it can create a discovery exception for a latent disease when it chose to enact § 25-224(5) covering asbestos-related medical conditions. We believe modification of the statute of repose is more properly the province of the Legislature. *Spilker v. City of Lincoln*, 238 Neb. 188, 469 N.W.2d 546 (1991). Accordingly, we decline to impose a discovery rule for latent medical conditions on the statute of repose for products liability actions, and in view of the foregoing, we conclude that the district court did not err when it granted appellees' motions for summary judgment.

## CONCLUSION

The district court did not err when it concluded that appellant's action was barred by the applicable statute of repose in § 25-224(2), thus entitling appellees to summary judgment. We, therefore, affirm the district court's order granting summary judgment in favor of appellees and dismissing appellant's case.

AFFIRMED.

HENDRY, C.J., concurs in the result.